08-0551-cv
Costello v. City of Burlington

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued on: July 6, 2009   Decided: February 14, 2011)

Docket No. 08-0551-cv

- - - - - - - - - - - - - - - - - - - - - - - - - -x

WILLIAM RAY COSTELLO,

Plaintiff-Appellant,

-v.-

CITY OF BURLINGTON, BURLINGTON POLICE DEPARTMENT,
GENE BURGMAN, TOM TREMBLY, BILL WARD, JOHN LEWIS,
and ENE EVALUATOR,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, Chief Judge, CALABRESI and
               POOLER, Circuit Judges.

Plaintiff appeals from a March 29, 2010 judgment of the United States District Court for the District of Vermont (Murtha, J.), granting summary judgment in favor of the Defendant police officer, Sgt. John Lewis--who asked plaintiff to lower his voice while he was preaching in a pedestrian mall--and re-entering its grant of the remaining Defendants' motion to dismiss Plaintiff's complaint.  The

district court held that the municipal noise ordinance, Burlington, VT, Code of Ordinances § 21-13 (2003), was constitutional as-applied.  AFFIRMED.

The Opinion of the Court is filed by Chief Judge Jacobs.

Judge Calabresi concurs in Parts I and III, and concurs in Part II to the extent indicated in his concurring opinion.

Judge Pooler concurs in the judgment and in Part III in a concurring opinion.

William Ray Costello, Milton, Vermont, pro se.

Pietro J. Lynn, Lynn, Lynn & Blackman, P.C., Burlington, Vermont, for Appellees.

DENNIS JACOBS, Chief Judge:

Plaintiff William Ray Costello, pro se, alleged that his First Amendment right to free speech was violated when Defendant Sgt. John Lewis of the Burlington Police Department issued Costello a written warning pursuant to a city noise control ordinance that prohibits "any person to make or cause to be made any loud or unreasonable noise."

Burlington, VT, Code of Ordinances § 21-13(b)(1) (2003). Costello was preaching at the top of his stentorian voice in a Burlington pedestrian mall. In its initial judgment entered January 11, 2008, the United States District Court for the District of Vermont (Murtha, J.) granted summary judgment in favor of Sgt. Lewis, holding that the ordinance was constitutional on its face and as applied to Costello. The district court granted the remaining Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Costello timely appealed. As to the facial challenge, we affirmed, citing Howard Opera House Assocs. v. Urban Outfitters, Inc., 322 F.3d 125, 128 (2d Cir. 2003) (rejecting the argument that the Burlington noise ordinance is unconstitutionally vague). See Costello v. City of Burlington, 329 F. App'x 330, 331 (2d Cir. 2009) ("Costello I"). With respect to Costello's as-applied challenge, we remanded for findings required by Deegan v. City of Ithaca, 444 F.3d 135 (2d Cir. 2006), as to the ambient noise level on Church Street, and we reserved decision as to the remaining Defendants. Costello I, 329 F. App'x at 331, n.2. After making further findings, the district court granted summary judgment in favor of Sgt. Lewis and re-entered its grant of the

remaining Defendants' motion to dismiss.  Costello appeals from the district court's March 29, 2010 judgment.  We affirm.

**BACKGROUND**

The facts are undisputed.  Late Saturday morning, June 30, 2007, Costello was street preaching on Church Street in Burlington, Vermont.  Church Street is a four-block, brick-paved, pedestrian mall with shops, restaurants, apartments, and public buildings along the sides, and with retail kiosks and political tables in the street.  Costello was in front of a jewelry store and across the street from an outdoor restaurant.  In the warmer months, the restaurants seat diners outdoor, and the street is full of pedestrian shoppers.  Vehicles are barred from the stretch of Church Street where the incident occurred, so traffic noise is negligible.

In response to a store owner's complaint that Costello was causing a disturbance, Sgt. Lewis parked his car a block away (the length of a football field[1]), and noted when he

---

[1] A laser measurement done later determined the distance to be 353 feet.

4

got out of the car that Costello's voice stood out as a singular sound much louder than anything else.  Sgt. Lewis approached Costello and asked that he lower his voice: "I'm not telling you that you can't preach, I'm telling you that you can't be out here shouting and yelling *anything*, and disrupting other folks that are trying to use the same space that you are."  Costello responded that he had a "right to preach the gospel with a . . . loud voice . . . to lift up [his] voice."  Costello was videotaping the encounter; the tape reveals no loud background noise.  Sgt. Lewis issued Costello a written warning for violating the following noise control ordinance:

> It shall be unlawful for any person to make or cause to be made any loud or unreasonable noise.  Noise shall be deemed to be unreasonable when it disturbs, injures or endangers the peace or health of another or when it endangers the health, safety or welfare of the community.  Any such noise shall be considered to be a noise disturbance and a public nuisance.

Burlington, VT, Code of Ordinances § 21-13(b)(1) (2003).  Exempted from the ordinance are "[e]vents and activities conducted by or permitted by the city."  Id. § 21-13(c)(5).

Costello filed suit.  Sgt. Lewis moved for summary judgment asserting that he was entitled to qualified immunity.  All other Defendants moved to dismiss the

complaint pursuant to Fed. R. Civ. P. 12(b)(6). On January 11, 2008, the district court granted summary judgment in favor of Sgt. Lewis and granted the remaining Defendants' motion to dismiss.[2] On appeal, we affirmed the district court's grant of summary judgment with respect to Costello's facial challenge to the constitutionality of Burlington's noise control ordinance, but we remanded pursuant to United States v. Jacobson, 15 F.3d 19, 21-22 (2d Cir. 1994), so that the district court could "supplement the record regarding the activities and noise level that are 'usual and customary' in the space where the alleged violation occurred" and "determine, in light of that record, whether Defendants were entitled to judgment as a matter of law."[3] Costello I, 329 F. App'x at 331. The district court received additional affidavits and briefing from the parties concerning the ambient noise level on Church Street on the day of the incident. On March 26, 2010, the court issued

---

[2] In its opinion, the district court construed Costello's complaint to allege both a facial challenge to the statute and an as-applied challenge to its enforcement.

[3] In view of the open as-applied question, we reserved judgment on whether the district court properly granted the remaining Defendants' motion to dismiss, stating that we would address the motion "only if the as-applied challenge is found to survive summary judgment." Costello I, 329 F. App'x at 331 n.2.

6

findings (which are integrated in the fact statement above), held that the Burlington noise control ordinance was constitutional as applied to Costello, and granted Sgt. Lewis's motion for summary judgment. Having rejected Costello's as-applied challenge, the court re-entered its grant of the remaining Defendants' motion to dismiss. Costello timely appealed.

**DISCUSSION**

We review <u>de</u> <u>novo</u> a district court's grant of summary judgment, <u>Pilgrim v. Luther</u>, 571 F.3d 201, 204 (2d Cir. 2009), and we affirm only where we are able to conclude, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**I**

In a public forum such as Church Street, "the government may impose reasonable restrictions on the time,

place, or manner of protected speech"; the United States Supreme Court has articulated a three-part test to determine whether such restrictions interfere with rights guaranteed by the First Amendment.  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  "To withstand constitutional scrutiny, government restrictions must be (1) content neutral, in that they target some quality other than substantive expression; (2) narrowly tailored to serve a significant governmental interest; and (3) permit alternative channels for expression."  Deegan v. City of Ithaca, 444 F.3d 135, 142 (2d Cir. 2006) (citing Ward, 491 U.S. at 791).  It is undisputed that Burlington's noise control ordinance is content neutral; the inquiry is therefore whether the ordinance was narrowly tailored to serve Burlington's interest to preserve the public health, safety, and welfare of its residents, and (if so) whether the ordinance provided an adequate alternative channel for Costello to preach.

**A**

Narrow tailoring "is satisfied so long as the . . . regulation promotes a substantial government interest that

8

would be achieved less effectively absent the regulation. To be sure, this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests." Ward, 491 U.S. at 799 (internal citations and quotations omitted). "[G]overnment 'ha[s] a substantial interest in protecting its citizens from unwelcome noise.'" Id. at 796 (quoting City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 806 (1984)); see also Hous. Works, Inc. v. Kerik, 283 F.3d 471, 481 (2d Cir. 2002). Burlington's stated interest in prohibiting any loud or unreasonable noise is to

> preserve the public health, safety, and welfare by
> prohibiting excessive and disturbing noise and to
> prevent noise which is prolonged or unsuitable for the
> time and place and which is detrimental to the peace
> and good order of the community. It is the goal of
> this section to allow all residents of our city to
> peacefully coexist in a manner which is mutually
> respectful of the interests and rights of others.

Burlington, VT, Code of Ordinances § 21-13(a). "By targeting noise that is 'unreasonable,' [an ordinance] evince[s] an intent to reach noise that exceeds what is usual and customary in a particular setting." Deegan, 444 F.3d at 143. Does Burlington's ordinance unreasonably restrict Costello's right to use his unamplified voice,

9

however loud it is, in that public place?

Costello relies on <u>Deegan</u>, which upheld an as-applied challenge to a noise ordinance prohibiting any noise that could be heard from twenty-five feet. <u>Id.</u> at 139, 145. Deegan was street preaching in the Commons of Ithaca, New York, a venue similar to Church Street, and he was advised by an Ithaca policeman to lower his voice because he could be heard more than twenty-five feet away. <u>Id.</u> at 138. In holding that the Ithaca ordinance was unconstitutional as applied to Deegan, we determined that Ithaca Commons was a public forum "used regularly for festivals, performing events, exhibitions, political demonstrations, and recreational activities," <u>id.</u> at 143, and we credited the district court's factual findings that

> the decibel level of speech that would comply with the 25 foot rule was often lower than the decibel level generated by the foot steps of a person in high heeled boots, conversation among several people, the opening and closing of a door, the sounds of a small child playing on the playground, or the ring of a cell phone.

<u>Id.</u> We held that the ordinance restricted "considerably more than is necessary to eliminate excessive noise" because it prohibited "'most normal human activity.'" <u>Id.</u>

We agree with the district court that, as a matter of law, Sgt. Lewis's enforcement of the noise control ordinance

10

did not burden substantially more speech than necessary to achieve Burlington's goal of curbing excessive noise. Costello's raised voice was heard more than 350 feet away, dominated the area, and was not subsumed in any competing ambient noise. Moreover, Costello's noise impinged on the use of the neighborhood by others with equal claim: residents in adjacent apartments who may wish quiet to work or think or listen to media; shop-owners who need customers; diners who wish to converse, do business, or court.

Finally, Sgt. Lewis made clear that he was not telling Costello to be silent, only that he must lower his voice. As here, "when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." Hill v. Colorado, 530 U.S. 703, 726 (2000).

**B**

The requirement of alternative channels is met easily in this case. Sgt. Lewis only directed Costello to lower his voice; Costello could continue to preach on Church Street. "That the city's limitations on volume may reduce

11

to some degree the potential audience for respondent's speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate." Ward, 491 U.S. at 802. Costello protests that he is denied the opportunity to preach at the top of his lungs, to "cry aloud" and "lift up [his] voice like a trumpet." It is obvious that this cannot be done in the time and place it was done and in a manner that respects the interests and rights of his fellow residents. "The requirement that ample alternative channels exist does not imply that alternative channels must be perfect substitutes for those channels denied to plaintiffs by the regulation at hand; indeed, were we to interpret the requirement in this way, no alternative channels could ever be deemed ample." Mastrovincenzo v. City of New York, 435 F.3d 78, 101 (2d Cir. 2006) (internal quotation marks omitted).

For these reasons, Sgt. Lewis's enforcement of the noise control ordinance was reasonable as applied to Costello as a matter of law.

**II**[4]

---

[4] For the reasons and to the extent set out in his concurrence, Judge Calabresi does not join this Part of the

12

This responds to Judge Pooler's concurring opinion, in which she **[A]** prefers to affirm on the ground of qualified immunity without deciding the constitutional issue, and **[B]** justifies her preference by positing a constitutional distinction between amplified sound and the unamplified human voice.

                                   **A**

Affirmance on the ground of qualified immunity only, as Judge Pooler prefers, may decide this case (this time), but it certainly would not advance matters.  That is because: Costello could then immediately return to Church Street, and resume screaming, as he is inspired to do; the police would have no incremental guidance from the courts on what to do; the next police officer who enforced Burlington's noise ordinance would be the defendant in Costello's next lawsuit; in that suit, the district court would have no guidance from this appeal; nor would *we*, on the next appeal--and this judicial proceeding, beginning to end, would be a waste of everyone's time.  This is not a case in which prudence counsels kicking the can down the road.  See, e.g., Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)

---

opinion.

13

(observing that "there are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong").

Judge Pooler argues that, "[w]ithout more of a record," it may be premature for us to decide whether Burlington's noise ordinance is "plainly constitutional."  Pooler Concurring Op. at 4.  In Costello I, we previously remanded for further fact-finding, to gauge the ambient noises on Church Street (because shouting in, say, a library is more invasive than shouting in a steel mill).  And the district court, having already issued one detailed opinion, responded with a second set of findings--which Judge Pooler still thinks deficient.

Judge Pooler's opinion suggests the steps and observations that the next police officer would have to undertake in order to complete the record in a way that would alleviate her qualms: before issuing a warning, the unfortunate officer--having nothing else to do--would have to poll restaurant patrons, shop-owners, customers, and residents of adjacent apartments to see if the screaming disrupts their "quiet and tranquility."  Pooler Concurring

14

Op. at 2 (quoting <u>Kovacs v. Cooper</u>, 336 U.S. 77, 87 (1949)). But no second remand is needed to confirm that people who dwell on Church Street may wish to open a window without hearing Costello screaming, or that shop owners or customers prefer a scream-free environment in order to focus on their dealings, or that diners in outdoor restaurants want to listen to each other without having to talk over Costello.

This case has been considered by the district court twice, and twice by this Court. Another remand would be futile. In any event, such obstacles should not be erected to frustrate enforcement of an ordinance that (as we have already held) is facially valid; otherwise, no police officer could enforce the ordinance without fear of reprisal.

**B**

In declining to join the majority opinion, Judge Pooler argues that the as-applied challenge "presents a closer question" because Costello's voice was unamplified. Pooler Concurring Op. at 1. Judge Pooler relies on the Supreme Court's decision in <u>Kovacs v. Cooper</u>--especially Justice Frankfurter's concurrence. True, the plurality opinion in <u>Kovacs</u> (which upheld the constitutionality of a city

15

ordinance banning sound trucks) recognized a difference between a sound truck and the human voice. But surely that difference is that sound trucks tend to be louder. <u>See</u> <u>Kovacs</u>, 336 U.S. at 97 (Jackson, J., concurring) ("Freedom of speech for Kovacs does not, in my view, include freedom to use sound amplifiers to drown out the natural speech of others."). An amplifier may render the human voice at conversational levels, just as the unamplified voice can override all other ambient sound: think of an auctioneer, or a hog-caller. None of this should need explication.

The holding of <u>Kovacs</u> rests on a broader principle, one that undercuts Judge Pooler's analysis:

> The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself.

336 U.S. at 88 (internal footnote omitted). That principle decides this case. In order to secure for Costello a right to preach at the top of his lungs in a pedestrian mall lined with shops, cafes and dwellings, we would have to impair the rights of all other Burlington residents who shop, work, and dine in the same compact area. Respect for Costello's right to preach does not trump the rights of everyone else.

16

Burlington's noise ordinance prohibits unreasonable noise, and Sgt. Lewis's application of it was reasonable and therefore constitutional.

The plurality in Kovacs should be a corrective to a common fallacy of judicial thinking of which Judge Pooler's concurrence is an apt illustration. Judges tend to overvalue the rights and interests of persons who bring constitutional litigation, while discounting to zero the rights of non-litigious persons whose interests are likewise affected and at stake--here, people who want to enjoy one another's company at lunch, at home, or walking down the street; people who communicate by exchanging civil words; people who want to collect their thoughts while doing business and shopping; people who want to take in their choice of music, or worry, or think thoughts. This is a form of myopia.

**III**

Costello's claims against the remaining Defendants fail for the reasons set forth in the district court's January 11, 2008 Opinion and Order. The complaint does not allege facts establishing the personal involvement of any of the

17

individual Defendants (except for Sgt. Lewis).  This defect is fatal to Costello's claim under 42 U.S.C. § 1983.  <u>See</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (providing that to state a claim under § 1983, a plaintiff must allege personal involvement of a defendant).  The claim pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), is similarly deficient because the complaint does not allege facts sufficient to show that the "the violation of his constitutional rights resulted from a municipal custom or policy."  <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998).

The judgment of the district court is AFFIRMED.

CALABRESI, *Circuit Judge*, concurring:

I concur in Parts I and III of the Chief Judge's opinion and join those parts in their entirety. I also agree with the conclusion of Part II of the Chief Judge's opinion that, given the facts in the record, this case is best decided on the merits rather than on qualified immunity grounds. *See Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 55 (2d Cir. 2003) (Calabresi, J.) ("[I]f courts consistently avoided the constitutional issue by simply dismissing suits on the basis of immunity, 'standards of official conduct would tend to remain uncertain, to the detriment both of officials and individuals.'" (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998))). I do not join Part II of the Chief Judge's opinion, because there are some aspects of that part of the opinion that I do not agree with fully and other aspects that I might agree with, but I do not think are necessary to the conclusion that Costello does not have a case on the merits.

Were I to reach the question of qualified immunity, I would be completely comfortable joining Judge Pooler's discussion of qualified immunity. I hence would have no problem joining Part II.B of her opinion. But because I agree that, given the uncontroverted facts in the record, Costello loses on the merits and because I believe a decision on the merits is more appropriate than a decision based solely on qualified immunity, my vote to affirm is based on the merits.

POOLER, *Circuit Judge*, concurring.

I believe that Costello's as-applied challenge presents a closer question than my colleagues are willing to acknowledge. Accordingly, I respectfully concur in the judgment, and join in Part III of the Chief Judge's opinion, but write separately because I believe this case is better resolved on qualified immunity grounds rather than on the merits.

I.

In concluding that Burlington's noise ordinance is plainly constitutional as applied to Costello, my colleagues gloss over the facts of the cases on which they rely—namely, that most of their legal authority relates to mechanically amplified noise. *See* Op. at 8 (citing *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) (amplified noise at rock concerts in New York's Central Park)); Op. at 9 (citing *Housing Works, Inc. v. Kerik*, 283 F.3d 471 (2d Cir. 2002) (amplified sound on steps, sidewalks and plaza in front of New York City Hall)). On this ground alone, their two principle authorities, *Ward* and *Kerik*, are factually distinguishable from the case *sub judice*; however, it also bears mention that *Ward* and *Kerik* both involved noise regulations designed in part to ensure the physical safety of residents, *see Ward*, 491 U.S. at 785; *Kerik*, 283 F.3d at 481. *Accord Carew-Reid v. Metro. Transp. Auth.*, 903 F.2d 914, 917 (2d Cir. 1990) ("In this case, the interest in eradicating excessive noise is bolstered by the serious public safety concerns posed by the noise to both the riders and employees of the subway system."). By contrast, the City of Burlington has not suggested that noise threatens the physical safety of any individual on the mall.

Further, *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984), is identified by my colleagues as the point of origin for the proposition that the

1

"Government has a substantial interest in protecting its citizens from unwelcome noise."  Op. at 8 (internal quotation marks, citation and alterations omitted).  That case, however, did not involve noise but rather an ordinance prohibiting the posting of signs on public property.  *See Taxpayers for Vincent*, 466 U.S. at 791-92.  To the extent *Taxpayers for Vincent* discussed noise, it did so only in describing the Supreme Court's holding in *Kovacs v. Cooper*, 336 U.S. 77 (1949).  *See Taxpayers for Vincent*, 466 U.S. at 805-06 ("In *Kovacs v. Cooper*, 336 U.S. 77 (1949), the Court rejected the notion that a city is powerless to protect its citizens from unwanted exposure to certain methods of expression . . . In upholding an ordinance that prohibited loud and raucous sound trucks, the Court held that the State had a substantial interest in protecting its citizens from unwelcome noise.").  It is *Kovacs* that gives me pause about the constitutionality of Burlington's ordinance as applied to Costello.

In *Kovacs*, the Supreme Court upheld a facial challenge to an ordinance that banned amplified sound trucks from using city streets to relay their message.  The Court noted that these trucks, with their "loud and raucous" noise were "dangerous to traffic at all hours" and upset the "quiet and tranquility" of residential neighborhoods.  336 U.S. at 87.  Central to the Court's holding in *Kovacs* was the notion that individuals in their homes were not free to walk away from the noise, *see id.* at 89 ("We think that the need for reasonable protection in the homes or business houses from the distracting noises of vehicles equipped with such sound amplifying devices justifies the ordinance.").  In concluding that the ordinance was constitutional, the plurality opinion in *Kovacs* stressed the difference between sound trucks and street corner speeches or pamphleting, recognizing that the streets are the "normal place for the exchange of ideas by speech or paper."  *Id.* at 86-87.  Further, Justice Frankfurter in his concurrence noted

"vital differences between natural speech, *even of the loudest spellbinders*, and the noise of sound trucks." *Id.* at 96 (emphasis added).

My colleagues believe that Burlington's ordinance is constitutional as applied to Costello because "Costello's noise impinged on the use of the neighborhood by . . . residents in adjacent apartments who may wish quiet to work or think or listen to media; shop-owners who need customers; diners who wish to converse, do business, or court." Op. at 10-11. All of these may be true, but no support for any of these conclusions is found in the record before us.

The Chief Judge's opinion concludes that the absence of record facts is insignificant. To the contrary, the Chief Judge insists that requiring such evidence—i.e., a finding that there were apartments within earshot of Costello, or that there was any diner outside who could hear Costello, or that Costello's preaching interfered with any customer's shopping—means that "before issuing a warning, the unfortunate officer . . . would have to poll restaurant patrons, shop-owners, customers, and residents of adjacent apartments to see if the screaming disrupts their 'quiet and tranquility.'" Op. At 14. This position misapprehends the foundation of the constitutional standard and mischaracterizes my concern about this case. The constitutional standard requires the government generally—not every summons-issuing police officer—show that the speech restriction is narrowly tailored to serve a significant government interest. *See Deegan*, 444 F.2d at 142. My concern with this case does not relate to what the officer did or did not do, but rather, consonant with the constitutional standard, to the City of Burlington's failure to put into the record any evidence that residents were disturbed, diners were unable to converse or shop-owners had difficulty soliciting customers. The evidence does not even tell us whether there was a single apartment within earshot of Costello.

Street preaching, while undoubtedly bothersome to some, has a long history in this country; it strikes me of at least some import that religious groups seeking protection from persecution for their religious activities by state governments were among the principal supporters of the Bill of Rights. *See* Douglas Laycock, *Religious Liberty as Liberty*, 7 J. Contemp. Legal Issues 313, 345-46 (1996). In this case, the burden was on the government to establish that Burlington's speech restriction is justified as narrowly tailored to serve a significant governmental interest. *See Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir. 2006). Without more of a record than we have before us, to conclude that the ordinance is plainly constitutional strikes me as too much of a thumb on the scale, especially where, as here, we need not reach the constitutional question to resolve the case.

## II.

## A.

Qualified immunity shields government officials from civil suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To rule on the issue of qualified immunity, courts generally proceed in two steps. First, courts usually address the threshold question of whether the complaint alleges the deprivation of an actual constitutional right. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The Supreme Court has explained that "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, "if a violation could be made out on a favorable view of the parties' submissions," courts then proceed to step two, which involves an inquiry as

4

to "whether the right was clearly established" at the time of the act grieved. *Id.* Whether a right was clearly established at the relevant time is a question of law, whereas the question of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *Kerman v. City of New York*, 374 F.3d 93, 108-09 (2d Cir. 2004).

*Saucier*'s two-step framework, while often helpful, is not mandatory; the Supreme Court has recognized that a court may, in its own discretion, refrain from determining whether a constitutional right has been violated and instead move directly to the question of qualified immunity (i.e., whether a constitutional right was clearly established at the time the defendant acted). *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) ("[W]hile the sequence of events set forth [in *Saucier v. Katz*] is often appropriate, it should no longer be regarded as mandatory."). Such an exercise of discretion is particularly appropriate where, as here, a case presents "difficult constitutional questions" and "there is available an easier basis for the decision (e.g., qualified immunity) that will satisfactorily resolve the case before the court." *Id.* at 817-18 (quoting *Brosseau v. Haugen*, 543 U.S. 194 (2004)). Because there is no question that Costello's right to preach as loudly as he could on Church Street was not clearly established at the time Sergeant Lewis asked him to lower his voice, we need not grapple with the First Amendment question in order to reach a satisfactory conclusion in this case. *Accord Higazy v. Templeton*, 505 F.3d 161, 179 n.19 (2d Cir. 2007) ("We do not reach the issue of whether Higazy's Sixth Amendment rights were violated, because principles of judicial restraint caution us to avoid reaching constitutional questions when they are unnecessary to the disposition of a case.").

5

B.

In determining whether a particular right was clearly established at the time a defendant acts, this Court considers three things: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991). Under this rubric, the dispositive question is whether it was "objectively reasonable," at the time of the challenged action, for the government official to have believed his actions were lawful. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *see also Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).

We have previously rejected a facial challenge to Burlington's noise ordinance, holding that the ordinance is not impermissibly vague. *See Howard Opera House Assocs. v. Urban Outfitters, Inc.*, 322 F.3d 125, 125 (2d Cir. 2003). We have also indicated that similarly-worded ordinances "do not necessarily raise constitutional concern." *Deegan v. City of Ithaca*, 444 F.3d 135, 140 (2d Cir. 2006). With respect to the third prong, Sergeant Lewis, "a 22-year veteran of the Burlington Police Department, testifie[d] that Costello's volume was '*not* typical, usual, or customary' for that location, and that he believed the yelling was disruptive for other people using Church Street." *Costello v. City of Burlington*, 708 F. Supp. 2d 438, 444 (D. Vt. 2010) (emphasis in original). The record provides no reason to doubt the veracity of Sergeant Lewis's testimony. Considered against the backdrop of our prior holdings, it is clear "officers of reasonable competence could disagree on the legality of [Costello's] actions," especially in light of the multitude of uses Church Street must accommodate. *Lennon v. Miller*, 66 F.3d 416, 420

6

(2d Cir. 1995) (internal quotation marks and citation omitted).  Sergeant Lewis is therefore entitled to qualified immunity.

$$* * *$$

For the foregoing reasons, I concur.