10-3784-cv
Fed. Ins. Co. v. Zurich Am. Ins. Co.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of November, two thousand eleven.

Present:
        ROBERT D. SACK,
        ROBERT A. KATZMANN,
        RICHARD C. WESLEY,
                *Circuit Judges*.
_____

FEDERAL INSURANCE COMPANY,

        *Plaintiff-Appellee*,

                v.                                          No. 10-3784-cv

ZURICH AMERICAN INSURANCE COMPANY,

        *Defendant-Appellant*.
_____

For Defendant-Appellant:         SUSAN H. HANDELMAN (Geoffrey W. Heineman, Eric C. Weissman, *on the brief*), Ropers, Majeski, Kohn & Bentley, P.C., New York, N.Y.

For Plaintiff-Appellee:          WILLIAM B. POLLARD, III (Emily Rosdeitcher, *on the brief*), Kornstein Veisz Wexler & Pollard, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Batts, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Zurich American Insurance Company ("Zurich") appeals from an August 20, 2010 order of the district court granting summary judgment in favor of Plaintiff-Appellee Federal Insurance Company ("Federal") in the amount of $1,400,000 plus interest.[1]

Federal and Zurich are parties to a co-surety agreement whereby they provided excess professional liability coverage to the Hartford Financial Services Group, Inc. ("The Hartford"), itself an insurer. An endorsement to the co-surety agreement relating to "Claims Cooperation" designates Federal as the "Controlling Company" with respect to the investigation and adjustment of any claim by The Hartford under the policy. This endorsement further provides, *inter alia*, that both Federal and Zurich "shall be liable for their proportionate share of allocated loss expense incurred by [Federal] associated with any claim made under the policy." J.A. 25. After settling a class-action lawsuit, The Hartford submitted a claim under the policy. Federal denied coverage and initiated an arbitration in Bermuda seeking a declaration of no coverage. The Hartford prevailed in that arbitration. The arbitration panel thereafter ordered Federal to pay $3.5 million in attorneys' fees and other costs incurred by The Hartford in the coverage dispute. Federal paid this amount and demanded that Zurich contribute its proportionate share of that

---

[1] Zurich's notice of appeal states that the appeal is taken from this order, which disposed of only one of Federal's three claims of relief, rather than from the final judgment entered on August **27**, 2010. "Because the appeal was otherwise proper and [Federal] ha[s] not been misled or prejudiced by this technical defect, we treat [Zurich's] notice of appeal as an appeal from the judgment." *Rhodes v. City of Plattsburgh*, 213 F.3d 626, 2000 WL 536397, at *1 n.1 (2d Cir. 2000) (summary order).

2

amount as an "allocated loss expense." Zurich refused, contending that the fees and costs award is not an "allocated loss expense." This lawsuit followed. We assume the parties' familiarity with the remaining facts and procedural history of this case.

We turn first to Zurich's argument that the district court lacked authority to grant summary judgment in favor of Federal *sua sponte*. Zurich asserts that the district court erred procedurally in granting summary judgment *sua sponte* because no party had moved for summary judgment, the district court failed to give proper notice, and the record before the district court at the time it rendered its decision was inadequate.

"We review *de novo* a district court's grant of summary judgment, and we affirm only where we are able to conclude, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)) (citation omitted). "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

> Before granting summary judgment *sua sponte*, the district court must assure itself that following the procedures set out in Rule 56 would not alter the outcome. Discovery must either have been completed, or it must be clear that further discovery would be of no benefit. The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment.

*Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996). Our precedents hold that a district court's failure to give notice before *sua sponte* granting summary judgment does not require reversal if the losing party was not "procedurally prejudiced" by the district court's ruling. *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139-40 (2d Cir. 2000).

3

> A party is procedurally prejudiced if it is surprised by the district court's action and that surprise results in the party's failure to present evidence in support of its position. If, however, the party either cannot claim to have been surprised by the district court's action or if, notwithstanding its surprise, the party had no additional evidence to bring, it cannot plausibly argue that it was prejudiced by the lack of notice.

*Id.* (citation omitted).

We conclude that Zurich's assertions of procedural error are without merit. The record makes clear that compliance with the Rule 56 procedures would not have affected the outcome of this case. On May 10, 2010, before an initial conference had been held, the parties submitted a joint letter to the district court stating their shared belief that "now is the proper time for a summary judgment motion, given that the material facts related to this matter are not in dispute, and, consequently, all that remains is a legal issue that is ripe for resolution." J.A. 38. This letter acknowledged the district court's rule of individual practice disfavoring pre-discovery summary judgment motions, but nonetheless expressed the view that "discovery here in advance of a summary judgment motion will add nothing to the resolution of this action except unnecessary expense and delay." J.A. 39. After holding an initial conference, the district received multiple rounds of letter briefing from the parties, and at a subsequent conference, heard oral argument on the merits of Federal's claims. At no point has Zurich identified any relevant facts that are in dispute or come forward with legal arguments that are materially different than what was before the district court when it orally granted summary judgment in favor of Federal. Accordingly, Zurich "cannot plausibly argue that it was prejudiced by the lack of notice." *Bridgeway*, 201 F.3d at 140.

Zurich also contends that the district court's grant of summary judgment was incorrect on the merits, arguing that the term "allocated loss expense" unambiguously excludes the award of attorneys' fees to Federal's adversary in an arbitration.

4

Under New York law, "insurance policies, like other contracts, are to be construed so as to give effect to the intent of the parties as expressed by their words and purposes." *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 103 (2d Cir. 2001) (internal quotation marks omitted). "Unambiguous terms are to be given their plain and ordinary meaning . . . ." *Id.* (internal quotation marks omitted). "Interpretation of an insurance policy is a legal question, unless ambiguous language in the policy can only be resolved by examination of contested extrinsic evidence, in which case it is a question of fact." *Id.* at 103-04 (internal quotation marks and brackets omitted). A contract is ambiguous where it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010) (internal quotation marks omitted). "We review *de novo* both whether a contract is ambiguous, and, when the district court finds a contract unambiguous, its interpretation of the contract." *Id.* (citation omitted).

The district court correctly concluded that the term "allocated loss expense" unambiguously includes the attorneys' fees award. While this term is not defined in the co-surety agreement, the various definitions of similar terms offered by both parties in their briefs broadly include costs that are related to the insurer's investigation, litigation, or settlement of a claim. These definitions further reveal that the modifier "allocated" refers to whether a particular expense is chargeable to a particular claim or loss, as opposed to, for example, an insurer's general office expenses or overhead. Here, the attorneys' fees award is a cost that is allocable to the underlying "loss" for which The Hartford sought coverage under the policy. Moreover, the award was an entirely predictable consequence of the arbitration proceeding that

5

the co-surety agreement authorized Federal to commence. The Hartford's primary policy specified that any coverage dispute must be arbitrated in Bermuda under the Bermuda Arbitration Act of 1986, which in turn gives arbitration panels ample discretion to award and allocate costs. In this case, the panel followed the well-established "English rule" that the losing party must pay the attorneys' fees of the prevailing party. The co-surety agreement contains no indication that the parties intended to treat an award of attorneys' fees any differently than other expenses that were incurred by Federal as the Controlling Company in relation to its adjustment of a claim. For these reasons, we perceive no error in the district court's interpretation of this term.

We have considered Zurich's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK