11-1404-cv
Lam v. Sephora USA Inc., et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED
BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1.
WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY
OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.


        At a stated Term of the United States Court of Appeals for the Second
Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl
Street, in the City of New York, on the 18th day of July two thousand twelve.

Present:      AMALYA L. KEARSE,
              SUSAN L. CARNEY,
              J. CLIFFORD WALLACE,*
                      *Circuit Judges.*


_____

OUSSEYNOU LAM,

              *Plaintiff-Appellant,*

              -v-                                        No. 11-1404-cv

SEPHORA USA INC., TANIA SEDA, KEN PIEPER,

              *Defendants-Appellees.*

_____

Appearing for Appellant:          Rudy A. Dermesropian (Marshall B.
                                  Bellovin, *of counsel, on the brief*), Ballon
                                  Stoll Bader & Nadler, P.C., New York, NY.

Appearing for Appellees:          Jill L. Rosenberg (Andrew Livingston, Renee

_____

        * The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth
Circuit, sitting by designation.

Phillips, *on the brief*), Orrick, Herrington & Sutcliffe LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Hellerstein, *Judge*).  **ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED**.

Plaintiff-Appellant Ousseynou Lam appeals from a March 2011 district court order granting summary judgment in favor of Defendants-Appellees Sephora USA Inc., Tania Seda, and Ken Pieper and dismissing Lam's complaint.  Lam brought suit against defendants after he was discharged from his position as a Loss Prevention Agent at a Sephora retail store.  Lam claimed defendants maintained a hostile work environment and wrongfully terminated him on account of his Senegalese national origin and Muslim religion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.*  Lam also asserted a common law claim for intentional infliction of emotional distress and a claim under the Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. No. 99-603, 100 Stat. 3359 (codified as amended in scattered sections of 8 U.S.C.).  The district court granted defendants' motion for summary judgment as to Lam's federal claims and declined to exercise supplemental jurisdiction over his state and city claims.  We assume familiarity with the underlying facts, the procedural history, and the arguments raised on appeal, which we reference only as necessary to explain our

decision.

A district court's grant of summary judgment is subject to our *de novo* review. *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011). We affirm if, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to defeat a defendant's motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

We generally analyze Title VII claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). Under *McDonnell Douglas*, the plaintiff is required to produce evidence showing that the *prima facie* elements of his discrimination claim have been met, whereupon the "burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the termination." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks omitted). "If the employer carries this burden, the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks omitted).

When a plaintiff alleges that both legitimate and illegitimate reasons

3

motivated an adverse employment action, we apply the "mixed-motive" framework

set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (plurality opinion).

*See also* 42 U.S.C. § 2000e-2(m). Under *Price Waterhouse*, "the plaintiff must

initially show that an impermissible criterion was in fact a 'motivating' or

'substantial' factor in the employment decision," at which point "the burden shift[s]

to the employer to prove that it would have made the same decision absent the

discriminatory factor." *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997) (other

internal quotation marks omitted); *see also Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d

161, 173 (2d Cir. 2006).

Lam makes two principal arguments on appeal. First, Lam asserts that he

has proffered sufficient evidence under the *McDonnell Douglas* standard to permit a

jury to find that defendants' stated reason for terminating him was pretextual, and

that discrimination was the real reason. Second, Lam contends that the district

court erred in failing to analyze his discrimination claims under the "mixed-motive"

framework set forth in *Price Waterhouse.* Both arguments are unavailing.

The record amply supports defendants' assertion that Lam was terminated

for repeatedly violating Sephora's policies and procedures and for disobeying the

direct order of Ken Pieper, his supervisor, and Steve Onderdonk, Sephora's

Regional Loss Prevention Director. The undisputed evidence shows that in

performance reviews and in verbal and written warnings dating from near the

beginning of his employment with Sephora in December 2001 until his termination

in May 2006, Lam was repeatedly reprimanded for his failure to follow Sephora's

4

loss prevention policies and procedures. Moreover, in the three months preceding his termination, Lam received two serious warnings from Pieper regarding his performance. On February 12, 2006, Pieper gave Lam a verbal warning after a Sephora customer complained that Lam was following him around the store in a manner that, according to Pieper, made the customer feel "very uncomfortable." Then, on April 20, 2006, Pieper issued Lam a written warning because Lam failed to complete the paperwork necessary to prosecute a shoplifter. In the written warning, Pieper advised Lam that Lam could be terminated if his performance did not improve or if he violated another Sephora policy or procedure.

Lam concedes that, following these two incidents, Pieper and Onderdonk instructed him not to apprehend any more Sephora customers, and to focus instead on assisting the customers. He also admits that on May 1, 2006, he disobeyed those instructions by stopping a customer and falsely accusing that individual of having Sephora merchandise in the pocket of his jacket—a stop that resulted in the customer threatening to file a discrimination claim against Sephora. Finally, in his response to defendants' Local Civil Rule 56.1 Statement, Lam does not dispute that soon after the May 1, 2006 incident, Pieper, Onderdonk, and Tania Seda terminated Lam for violating Sephora's loss prevention policies and for disobeying Pieper and Onderdonk's direct order not to make any more customer stops.

Notwithstanding these undisputed facts, Lam maintains that discrimination was the real reason for—or, alternatively, that it played a substantial role in—his termination. Lam argues that Seda, who began working for Sephora as a store

5

manager approximately four months before Lam's termination, was biased against him. Lam does not dispute that defendants had identified problems with his work performance long before Seda became a Sephora employee, nor does he allege that Seda played a part in any of the verbal and written warnings that Lam received prior to his termination. He asserts, however, that two remarks that he alleges were made by Seda show her to have had a discriminatory state of mind with regard to Lam. Defendants deny this characterization and accurately point out that Lam has provided materially different accounts of both purported remarks by Seda in his various submissions to the district court.

With regard to the first remark, Lam testified at his deposition that shortly after Seda was hired, Lam told Seda, in response to her inquiry, that he was from Senegal, and Seda told him that she was from Puerto Rico. After Lam stated that he thought that Seda was actually from the Dominican Republic, Seda explained that she was Puerto Rican and, therefore, unlike someone from the Dominican Republican, she was a U.S. citizen. In a subsequent affidavit, however, Lam asserted that in that same conversation, directly after Lam informed Seda that he was from Senegal, she responded: "This country is not Africa, it is the United States, and it belongs to the Americans and Puerto Ricans." Given this contradiction, the district court did not err in concluding that Lam's new statement was insufficient to overcome his prior deposition testimony and create a factual issue that was genuine. *See Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969). Moreover, even were we to credit Lam's affidavit, this

6

sole comment—that the United States belongs to Americans and Puerto Ricans—does not demonstrate that Seda was biased against people from Senegal, nor does it permit the inference that Lam's national origin played any role in his termination.

With regard to the second alleged remark, Lam testified in his deposition that, in early April 2006, after Seda saw Lam change into African clothing to attend his mosque, he overheard Seda comment, "[T]his place is not the mosque, when I come back from my vacation, I kick him out." Such a statement might ordinarily suggest that religion could have played a role in the decision to terminate Lam, at least insofar as Seda's involvement in that decision is concerned. We note that Lam did not refer to Seda's alleged pledge to "kick him out" at all in his complaint, his affidavit, his memorandum of law in opposition to summary judgment in the district court, his response to defendants' Rule 56.1 statement, or when discussing the relevant evidence of religious discrimination during oral argument before the district court.[1] Lam's omission of the "I kick him out" statement from each of these submissions—in which he stated only that Seda said, "[T]his is a workplace, not a mosque"—was particularly striking in his attorney's oral argument against summary judgment in the district court. When the court observed that there was a

[1] Lam maintains that any discrepancies in his testimony and in his submissions to the district court are the result of his limited English skills. We can think of no reason why Lam would be able, during his deposition, to describe in English certain statements that Seda allegedly made, but would be unable to do the same, with the assistance of his attorney, in his affidavit and other filings. Furthermore, Lam's language deficiencies do not explain his failure, until his briefs on appeal, to cite—or rely on in any way—what otherwise might be his strongest piece of evidence against defendants, Seda's alleged comment that she intended to "kick [Lam] out."

7

"disconnect" between the allegedly overheard statement and Lam's termination, his attorney made no effort to argue to the court that a connection between Seda's religious animus and Lam's termination was inherent in Seda's own juxtaposition of her negative reference to the "mosque" and her alleged announcement, "I kick him out." *Cf. Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (permitting evaluative assessment on summary judgment of the plaintiff's varying accounts "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete"). Lam, like the plaintiff in *Jeffreys*, relies exclusively on his own testimony as to Seda's mosque and kick-him-out statement, despite the fact that his deposition testimony was that Seda made that statement to three other Sephora employees who were known to him. The record contains no indication that Lam made any effort to take the depositions of any of those employees or that he asked the district court for more time in order to do so.

Based on the foregoing, we conclude that Lam has failed to produce sufficient evidence from which a reasonable jury could find that his termination "was more likely than not a product of discriminatory animus." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009). Because we determine that Lam has not made the threshold showing that his religion or his national origin "was in fact a 'motivating' or 'substantial' factor" in his termination, *Raskin*, 125 F.3d at 60 (other internal quotation marks omitted), we need not address Lam's contention that the district court erred in failing specifically to analyze his claims under a "mixed-motive"

8

framework.

As to his hostile work environment claims and his claim under IRCA, Lam has made no argument against an affirmance of the district court's dismissal of these claims.  Nor does Lam challenge the district court's decision declining to exercise supplemental jurisdiction over his New York State, New York City, and common law claims.  He has therefore waived any challenge to these aspects of the district court's decision.  *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

We have considered Lam's remaining arguments and conclude that they are without merit.   The judgment of the district court is therefore **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk