**Brendan CUNNEY, Plaintiff,**

v.

**BOARD OF TRUSTEES OF the VILLAGE OF GRAND VIEW, New York; Zoning Board of Appeals for the Village of Grand View, New York; Joseph W. Knizeski, as Building Inspector for the Village of Grand View; Atzl, Scatassa & Zingle Land Surveyors; John Atzl, Individually, Defendants.**

No. 08–CV–9507–WGY.

United States District Court, S.D. New York.

Dec. 18, 2009.

Dennis E.A. Lynch, Feerick Lynch PLLC, South Nyack, NY, Mary Elizabeth Brady Marzolla, MacCartney, MacCartney, Kerrigan & MacCartney, Nyack, NY, for Plaintiff.

Lewis R. Silverman, Jennifer H. Pymm, Samantha Velez, Rutherford & Christie, LLP, New York, NY, Lori Beth Lewis, Steven R. Sundheim & Associates, White Plains, NY, for Defendants.

### Memorandum and Order

WILLIAM G. YOUNG, District Judge.[1]

The plaintiff, Brendan Cunney ("Cunney"), seeks compensatory damages in the amount of three million dollars from the Village of Grand View–on–Hudson (the "Village") for an alleged violation of his constitutional rights guaranteed by the First and Fourteenth Amendments. The Village moves to dismiss Cunney's complaint. Although the Village labeled its motion as a motion to dismiss, both parties refer this Court to exhibits beyond the four walls of the complaint. Accordingly, this Court converts the motion to a motion for summary judgment under Federal Rule of Civil Procedure 56.[2] *See Global Network Commc'ns, Inc. v. City Of New York,* 458 F.3d 150, 155. (2d Cir.2006).

### I. Undisputed Facts

Cunney owns property (the "Property") on River Road within the village of Grand View–on–Hudson. Pl.'s Compl. ¶ 2 [Doc. 1–2]. The Property slopes downward from River Road to a flat area where the home in question was constructed. The elevation of River Road above the Hudson is approximately twenty-six feet, *see* Brady–Marzolla and Pl.'s Decl., Ex, ("Pl.'s Ex.") N, while the elevation of the flat area is approximately eight feet, *see* Pl.'s Ex. G.

In 2006, Cunney desired to improve the Property and applied to the Village for the requisite permits. Upon completion of the home, Cunney applied for a certificate of occupancy (the "Certificate").

Cunney must comply with specific building code regulations to receive the Certificate. One such regulation, Village Code, Chapter IX, § E, states that no building shall be erected in Zone B (R–10) which shall rise more than two stories in height nor more than four and one-half feet (4' 6")

---

1. Of the District of Massachusetts, sitting by designation.

2. At the motion session, held via video conference on October 27, 2009, both parties agreed to the conversion.

from the "easterly side of River Road." Pl.'s Ex. F at 16. The Village defines "easterly side of River Road" as "the point at which the road surface of River Road intersects with the easterly curb adjacent to River Road." *Id.* at 4. Zone B (R–10) comprises the area between River Road and the mean high water mark of the Hudson River-running north-south to the Village's limits. *Id.* at 8. Cunney's property falls within Zone B (R–10). Pl.'s Co-rapl. ¶ 2. Therefore, the highest point of his home must not rise higher than four and one-half feet above the easterly side of River Road. Village Code, Chapter IX, § E. The zoning law, however, makes no mention of the point on River Road from which the measurement should be taken (e.g., if the Property has 100 yards of frontage on River Road, where within those 100 yards must the measurement be taken?).

To ensure compliance with Village Code, Chapter IX, § E, Joseph W. Knizeski ("the Inspector") instructed Cunney that a letter from his engineer was required to certify that the height of his new house comported with the regulation. Pl.'s Ex. J. Cunney complied with this request, and submitted a letter to the Village stating that his home would be three inches over the height requirement. Pl.'s Ex. K, On two separate occasions, the Inspector deemed the house in compliance with the regulation. *See id.* (stating that the Village Engineer's measurement found the house in compliance with the Ordinance); Pl.'s Ex. M (stating that the house substantially complies with the Ordinance because it falls within the de minimus grace area). The elevation of River Road used in these measurements, however, was in-

correct. *See* Pl.'s Ex. P (stating that the measurements were based upon an incorrect elevation map provided by the County and that the correct elevation was two feet lower). In light of this conclusion, the Village Engineer measured a third time; this measurement revealed that the home's height exceeded the ordinance by 2.95 feet. Pl.'s Ex. N.

Cunney appealed the denial of the Certificate to the Zoning Board of Appeals. The Board discussed the correct method to measure from the easterly side of River Road, *see* Pl.'s Ex. W at 14; Defs.' 56.1 Counterstatement of Material Facts, Ex. B, and gave mixed answers. Board Member Wolzien stated that the measurement should be taken from "any given point above River Road," while Board Member Kaliff stated that the "height should be measured from the lowest point of the road." *Id.* Dr. Chamberlain–Hellman, another member of the Board, admitted that the "regulation is ambiguous." Pl.'s Ex. X. The Board rendered a decision, granting a three-foot height variance subject to three specific conditions;

1. Remove the pool house from its present location prior to the issuance of the Certificate;

2. Ensure an open an unobstructed view for both the entire northerly side of the Property and from the northeasterly corner of the Property to the river on a diagonal line; and

3. No structures are to be built in the unobstructed area described in condition two.

Pl.'s Ex. Y. Cunney then filed an Article 78 proceeding in the Supreme Court regarding the Boards ruling.[3]

---

**3.** In the Article 78 hearing, Cunney sought to overturn the Zoning Board's definition of height. Defs.' Mem. Supp. Mot. Dismiss 8. The Justice of the Supreme Court of New York annulled the Zoning Board's ruling for violating the New York's Open Meeting Laws but stated that the Village neither irrationally nor unreasonably defined height. *Cunney v. Board of Trustees of the Village of Grand View,* Index No. 11055/09 (April 2, 2009). This

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, the summary judgment inquiry depends upon "the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202. In evaluating the record to decide whether there is a genuine issue of material fact, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

### B. Void for Vagueness

Cunney alleges that Village Code, Chapter IX, § E, is unconstitutionally vague both facially and as applied to him. *See* Pl.'s Compl. ¶¶ 26–30. The thrust of the as-applied challenge contends that village Code, Chapter IX, § E, failed adequately to notify him what conduct the regulation required and that it that created a risk of subjective enforcement. *See Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006). The facial challenges contends that Village Code, Chapter IX, § E, generally fails adequately to notify a reasonable person what conduct the regulation requires and that it poses a risk of subjective enforcement. *See id.*

#### 1. Legal Framework

A statute violates due process if its "prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). An individual may rely upon two distinct grounds to prove that a statute is so vague that it denies his right to due process. *See Thibodeau v. Portuondo,* 486 F.3d 61, 65–66 (2d Cir., 2007). First, regulations that "fail[ ] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it [requires]" are unconstitutionally vague. *Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597. (2000). Second, regulations that "authorize[ ] or even encourage[ ] arbitrary and discriminatory enforcement" are void for vagueness. *Id.* Thus, legislators must ensure that a law or regulation is "crafted with sufficient clarity" such that a person of ordinary intelligence can understand what the law requires or prohibits. *Piscottano v. Murphy,* 511 F.3d 247, 280 (2d Cir.2007) (internal quotations omitted). Additionally, legislators must "provide explicit standards for those who apply" statutes to avoid "resolution[s] on an ad hoc and subjective basis.…" *Grayned,* 408 U.S. at 108–09, 92 S.Ct. 2294; *ABN 51st St. Partners v. City of New York,* 724 F.Supp. 1142, 1147 (S.D.N.Y.1989) (Patterson, J.).

While the vagueness doctrine seems to call for strict application, multiple factors lessen its force. As long as legislators are "[c]ondemned to the use of words," statutes cannot be crafted with "mathematical certainty." *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294. Additionally, the civil nature of the goal of Village Code, Chapter IX, § E—ensuring views of the Hudson River—relaxes the rigidity of the vagueness doctrine. *See Arriaga v. Mukasey,* 521 F.3d 219, 223 (2d Cir.2008) (citing *Village*

ruling did not reach the issues raised in the      case at bar.

*of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)) (explaining that challenges to regulations for vagueness in the civil context receive a less scrupulous eye than those in the criminal context because the consequences are less severe).

■ A plaintiff whose conduct violates the statute he challenges cannot bring forth a viable facial challenge against that statute. Therefore, this Court "examine[s] the complainant's conduct before analyzing other hypothetical applications of the law." *Village of Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. 1186. Thus, this Court must ask and answer two questions pertaining to Cunney individually; was he put on adequate notice of the behavior required by Village Code, Chapter IX, § E, and does Village Code, Chapter IX, § E encourage arbitrary enforcement?

### 2. Whether a reasonable person would adequately be notified of Village Code, Chapter IX, § E's required conduct

■ Village Code, Chapter IX, § E clearly notifies a reasonable person what actions are allowed, and what actions are disallowed. "Regulations satisfy due process as long as a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require." *Rock of Ages Corp. v. Secretary of Labor,* 170 F.3d 148, 156 (2d cir.1999). The ordinance describes, and a person of reasonable intelligence could discern, what activities are prohibited-building structures over two stories tall or four and one-half feet above the easterly side of River Road. All residents with property located in Zone B (R–10), including Cunney, were fairly notified of these restrictions by the Village's zoning laws. Pl.'s Ex. P. The building codes

must not, however, be enforced on an ad hoc and subjective basis.

### 3. Whether Village Code, Chapter IX § E encourages arbitrary enforcement

The second prong of an as-applied vagueness challenge asks this Court to analyze "whether the law provides explicit standards for those who apply it." *Farrell,* 449 F.3d at 486 (quoting *United States v. Nadi,* 996 F.2d 548, 550 (2d Cir. 1993)). The Supreme Court—albeit in the criminal context—has emphasized the utmost importance of objective enforcement. *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("[T]he more important aspect of [the] vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.") (internal quotations omitted).

Courts follow two well-marked routes when analyzing a statute to determine if the statute encourages arbitrary enforcement. First, this Court "may determine ... that a statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement." *Farrell,* 449 F.3d at 494. *See also Hill,* 530 U.S. at 740, 120 S.Ct. 2480 (2000) (Souter, J., dissenting); *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1051, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991); *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Linares Huarcaya v. Mukasey,* 550 F.3d 224, 231 (2d Cir., 2008); *Thibodeau v. Portuondo,* 486 F.3d 61, 67 (2d Cir.2007); *United States v. Schneiderman,* 968 F.2d 1564, 1568 (2d Cir.1992). Second, an as-applied challenge may be defeated even if the regulation provides no standards to curb arbitrary enforcement, when "the conduct at issue falls within the core of the [regulation's] prohibition, so that the enforcement

before the court was not the result of ... unfettered latitude." *Arriaga v. Mukasey,* 521 F.3d 219, 228 (2d Cir.2008) (quoting *Farrell,* 449 F.3d at 494). *See also Thibodeau v. Portuondo,* 486 F.3d 61, 67–63 (2d Cir.2007). *Cf. Smith v. Goguen,* 415 U.S. 566, 577–78, 94 S.Ct. 1242, 39 L.Ed.2d 605 (explaining that "there are statutes that by their terms ... apply without question to certain activities but whose application to other behavior is uncertain," and thus actions within the statute's core cannot be vague as applied to "hard-core violator[s] ... whatever its implications for those engaged in different conduct"). Accordingly, this Court must answer whether Village Code, Chapter IX, § E encourages arbitrary enforcement. If this Court answers that question in the affirmative, it must evaluate whether Cunney's violation goes to the core of the regulation.

■ Village Code, Chapter IX, § E does not provide "sufficiently clear standards" upon which one objectively could measure the height of homes from the easterly side of River Road. No particular point of reference from which to measure height is mandated. To illustrate: during the third and final measurement of the home's height, the Village Engineer measured the height of six different roof locations from six different points on River Road. Pl.'s Ex. W. Additionally, three members of the Village's Zoning Board of Appeals, the entity charged with enforcing the regulation, described various ways in which they understood the regulation. *See* Pl.'s Ex. W at 14; Defs.' 56.1 Counterstatement of Material Facts, Ex. B. (stating that the measurement should be taken from "any given point above River Road," and that the "height should be measured from the lowest point of the road"). Additionally, a member of the board admitted that the "regulation is ambiguous." Pl.'s Ex. X. Accordingly, the Village's actions-its measurement procedure at the Property-and its own admissions, demonstrate

that no explicit standards exist regarding the method with which to measure from the easterly side of River Road. Thus, the ordinance could encourage potentially arbitrary or ad hoc enforcement.

While the regulation does not provide sufficiently clear standards to guide its enforcers, Cunney's Property falls within the core goals of Village Code, Chapter IX, § E. The core goal of Village Code, Chapter IX, § E is to "preserve ... the remaining view of the Hudson [River] from River Road." Pl.'s Ex. F. In other words, the shortest distance from any point on River Road to the Hudson River must be free of any view-obstructing structures that exceed the height requirements. For example, if a home has both a 100–yard frontage on River Road and an identical 100–yard frontage on the Hudson, an infinite amount of points can be used to measure the height. The measurement, in order to achieve its goal, must evaluate whether any structure between that arbitrary point and the Hudson violates the regulation. This can only be achieved if the line from point A, on the road, and point B, on the Hudson, is a straight line and the angle at measurement corresponds with the shortest distance between the two points.

■ As discussed, "if a statute has a core meaning that can reasonably be understood, then it may validly be applied to conduct within the core meaning." *Brache v. Westchester County,* 658 F.2d 47, 51 (2d Cir.1981). This standard is judged through a reasonable enforcing officer's lens, asking whether such a reasonable enforcing officer "could doubt the law's application in the circumstances." *Farrell,* 449 F.3d at 494. Here, the Village Engineer, in a letter to the Village Clerk, stated that the road elevations were "lower than indicated." Pl.'s Ex. N. This finding prompted the final height measurement. The elevation of the easterly side of River Road from which the measurement was

taken—a point closest to the house in question, not the lowest point on the road—is 26.55 feet. *Id.* Once the correct elevation of River Road was established, and the final measurements were taken, the Property fell squarely within the proscribed height. The home on the Property has a maximum elevation of 2.95 feet greater than the allowable height of the highest roof-line. Thus, the Property's height markedly destroys the views of the Hudson River from River Road. Pl.'s Ex. N. Therefore, Cunney's as-applied challenge to Village Code, Chapter IX, § E must fail.

### 4. Cunney cannot establish a viable facial attack against Village Code, Chapter IX, § E

The Supreme Court provides three avenues for facial attacks upon statutes on vagueness grounds. *Rubin v. Garvin,* 544 F.3d 461, 470–71 (2d Cir.2008). Therefore, only when a statute encourages arbitrary enforcement, *see City of Chicago v. Morales,* 527 U.S. 41, 60, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion), intrudes upon First Amendment or other constitutional rights,[4] *see Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), or provides

no notice so that "men of common intelligence must necessarily guess at its meaning," *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) (internal quotations omitted), is a facial attack viable, Specifically, Cunney has established that the regulation may encourage arbitrary enforcement. This argument, however is a nonstarter regarding the facial attack. For Cunney's facial challenge to survive he "must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. 1186. *See also United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("A facial challenge ... is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). *But see United States v. Rybicki,* 354 F.3d 124, 131–32 (2d Cir.2003) (en banc) (expressing doubt regarding the "no set of facts" language required by *Salerno* and suggesting that *Morales* plurality's permeability standard for facial vagueness attacks may apply). Regardless of the appropriate standard in which a facial attack may be brought, Cunney's challenge cannot continue. For, "a showing [that either no set of

---

**4.** A workable facial attack on the regulation may be based upon a due process claim through the Fourteenth Amendment. "No State shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1 (emphasis added). This argument has been suggested in dicta by the Seventh Circuit.

> Even if such an ordinance were limited to [certain factors], it might be objectionable on grounds of vagueness in the absence-of-standards sense. Although since *Board of Regents v. Roth* it has been customary to think of property as the emanation of state or federal law, rather than the product of human work as John Locke thought, there may be limits, as yet untested, to this idea. If a state decreed that every new business would have to have a state license revoca-

ble at will, the older view that some property rights are natural rather than created by government—a view still occasionally encountered in the cases—might be resurrected and might, in combination with the concept of vagueness as absence of standards, make such a law invalid under the due process clause. *Baer v. City of Wauwatosa,* 716 F.2d 1117, 1125 (7th Cir.1983). Cunney, however, cannot establish a property interest in the home because he could not legitimately claim a right to occupy it. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Because Cunney did not have a constitutional right to occupy the Property, a facial challenge is not warranted under this prong.

402

circumstances exists where the regulation would be valid or that the statute is thoroughly permeated with vagueness] is impossible for [someone] whose as-applied challenge lacks merit, because he cannot establish that the statute is vague in his own case." *Rubin,* 544 F.3d at 471.

## C. Substantive Due Process

Cunney must establish that the Village deprived him of a protectable property interest by acting under the authority of state law to succeed in his claim for damages under 42 U.S.C. § 1983. *Roth,* 408 U.S. at 569, 92 S.Ct. 2701 (stating that "an individual['s] entitlement [to the property], grounded in state law, which cannot be removed except 'for cause' " is the cornerstone of a property interest); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). This entitlement must be more than a mere desire or expectation to occupy the Property. Cunney must have a "legitimate claim to entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

▌ Cunney does not have a "legitimate claim to [occupy the Property]." To have a legitimate claim, the chances that the Certificate would be granted for the Property must be near certain. *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985). This test is applied vigorously. *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 919–20 (2d Cir.1989). Moreover, municipal discretion regarding the issuance of the Certificate negates any individual property interest. *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996). "The decision to grant a certificate of occupancy [under New York Law] is a discretionary act dependent upon full compliance with all laws." *Celani v. Marconi,* 256 A.D.2d 1064, 682 N.Y.S.2d 754, 756 (1998), When a property violates land-use or zoning laws the denial of a certificate of occupancy is appropriate. *See id.; International Merchants v. Village of Old Field,* 203 A.D.2d 247, 609 N.Y.S.2d 341, 342 (1994). Here, Cunney's property violated the regulation. Because the property was not in compliance with a zoning law, the Inspector used his discretion to properly deny the Certificate. Due to this discretion, Cunney never established a legitimate claim to occupy the Property. Therefore, the village cannot be liable for violating a constitutional right that never vested.

Cunney points this Court to two cases standing for the principle that an individual possesses a property right when "a landowner demonstrates a commitment to the purpose for which [the Certificate] was granted by effecting substantial changes and incurring substantial expense to further the development." *Frooks v. Town of Cortlandt,* 997 F.Supp. 438, 450–51 (S.D.N.Y.1998) (citing *Town of Orangetown v. Magee,* 88 N.Y.2d 41, 643 N.Y.S.2d 21, 665 N.E.2d 1061, 1067 (N.Y.1996)).

Nonetheless, issuance of the certificate of occupancy or the landowner's substantial changes and expenditures, by themselves, will not establish a vested right. *Id.* Additionally, the language from *Frooks* speaks to incurred expenses after the certificate of occupancy was granted. *See Frooks,* 997 F.Supp. at 450–51 ("The landowner's reliance on the certificate must have been so substantial that the municipal action results in serious loss rendering the improvements essentially valueless.") (internal quotations omitted) (emphasis added), Here, Cunney was never granted a certificate of occupancy, and therefore any improvements he made could not have been in reliance of the Certificate.

Additionally, Cunney points this Court to *Acorn Ponds at North Hills v. North Hills,* 623 F.Supp. 688 (E.D.N.Y.1985). There, the district court stated:

APNH claims that it had received 41 building permits and that some of its buildings were completed, or nearly so, and others were substantially started-all in accordance with the building permits issued by North Hills. It, therefore, had more than a unilateral expectation that [Certificates of Occupancy] would be issued. It had every reason to rely on the representation implicit in issuing the building permits that [Certificates of Occupancy] would be granted if the buildings were constructed in accordance with the plans upon which the building permits were issued.

*Acorn,* 623 F.Supp., at 692. The Second Circuit, however has not adopted this reasoning, instead opting to follow *Yale Auto Parts* and its progeny. Additionally, *Acorn* can be reconciled with the facts here. In *Acorn,* the defendants refused to inspect the remaining buildings due to continuous quarrels between the parties over certain variances. Here, the village did not refuse to inspect the Property. The Village made a final measurement to determine the actual height of the house based upon the correct elevation. In fact, the Village granted the variance subject to certain conditions, Pl.'s Compl. ¶ 21.

*Frooks* and *Acorn* do not dissuade this Court from its conclusion that Cunney never possessed a protectable property right to occupy the Property. Therefore, Cunney's section 1983 claim must be dismissed.

## III. CONCLUSION

This Court grants summary judgment for the Village on both the vagueness and section 1983 claims.

SO ORDERED.