10-0485-cv
Cunney v. Bd. of Trs. of Vill. of Grand View

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: January 3, 2011          Decided: October 19, 2011)

Docket No. 10-0485-cv

————————————

BRENDAN CUNNEY,

*Plaintiff-Appellant*,

- v. -

BOARD OF TRUSTEES OF THE VILLAGE OF GRAND VIEW, NEW YORK, ZONING BOARD OF APPEALS
FOR THE VILLAGE OF GRAND VIEW, NEW YORK, JOSEPH W. KNIZESKI, AS BUILDING INSPECTOR
OF THE VILLAGE OF GRAND VIEW-ON-HUDSON,

*Defendants-Cross-Claimants-Appellees.*[*]

————————————

Before: KEARSE, WINTER, and HALL, *Circuit Judges*.

Plaintiff-Appellant Brendan Cunney appeals from the December 18, 2009 order and the

January 20, 2010 amended judgment of the United States District Court for the Southern District

———————————

[*] The Clerk of Court is respectfully requested to amend the official case caption as
shown above.

of New York (Young, *J.*),[**] dismissing his complaint against the Board of Trustees of the Village of Grand View-on-Hudson, the Zoning Board of Appeals for the Village, and Joseph W. Knizeski, in his capacity as the Village's building inspector (collectively, the "Village Defendants"). We hold that the relevant provision of the Village Zoning Law as applied to Cunney's property is unconstitutionally vague. For the reasons that follow, we REVERSE the district court's grant of summary judgment in favor of the Village Defendants on Cunney's void-for-vagueness claim, and we direct the court to enter summary judgment in favor of Cunney on this claim. In addition, we VACATE the district court's grant of summary judgment in favor of the Village Defendants on Cunney's substantive due process claim, and REMAND for further proceedings consistent with this opinion.

Reversed in part, vacated in part, and remanded.

> MARY E. MARZOLLA, Feerick Lynch MacCartney, PLLC, South Nyack, New York, *for Plaintiff-Appellant*.

> LEWIS R. SILVERMAN, Rutherford & Christie, LLP, New York, New York, *for Defendants-Appellees*.

HALL, *Circuit Judge*:

Plaintiff-Appellant Brendan Cunney appeals from the December 18, 2009 order and the January 20, 2010 amended judgment of the United States District Court for the Southern District of New York (Young, *J.*), dismissing his complaint against the Board of Trustees of the Village

---

[**] The Honorable William G. Young, United States District Judge for the District of Massachusetts, sitting by designation in the Southern District of New York.

of Grand View-on-Hudson (the "Board"), the Zoning Board of Appeals for the Village (the "ZBA"), and Joseph W. Knizeski, in his capacity as the Village's building inspector (collectively, the "Village Defendants"). Cunney brought this action against the Village Defendants alleging a violation of his constitutional rights as a result of the ZBA's denial of his application for a certificate of occupancy ("CO") for his newly-built home. Specifically, Cunney asserted that Village Zoning Law, Chapter IX, Section E ("section E" or "the ordinance") is void for vagueness and that the Village Defendants violated his substantive due process rights by denying him a CO. The district court granted summary judgment in favor of the Village Defendants on both claims. *Cunney v. Bd. of Trs. of Vill. of Grand View, NY*, 675 F. Supp. 2d 394, 403 (S.D.N.Y. 2009). The court concluded that Cunney's vagueness claim failed because a reasonable person could discern that section E prohibited the building of structures that rise more than four and one-half feet above the easterly side of River Road. *Id.* at 399. Despite the district court's subsequent determination that section E encouraged arbitrary or ad hoc enforcement, it nonetheless found the ordinance constitutional because its application to Cunney's property coalesced with the ordinance's core goal—to preserve the remaining views of the Hudson River from River Road. *Id.* at 400-01. The court also determined that Cunney's substantive due process claim failed because Cunney did not possess a legitimate claim of entitlement to a CO. *Id.* at 402.

We hold that section E of the Village Zoning Law is unconstitutionally vague as applied to Cunney's property because it provides inadequate notice of the elevation point on River Road from which Cunney should measure the height of his house to determine compliance, and because it authorizes arbitrary and discriminatory enforcement. Furthermore, we hold that the

3

ordinance's constitutionality is not otherwise saved by its core meaning because a reasonable enforcement officer could find that the height of Cunney's house is in compliance with section E's restrictions. We therefore reverse the district court's grant of summary judgment in favor of the Village Defendants on Cunney's void-for-vagueness claim, and direct the court to enter summary judgment in favor of Cunney on this claim. In addition, we vacate the grant of summary judgment in favor of the Village Defendants on Cunney's substantive due process claim, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The following facts are undisputed. Cunney owns one half acre of property that lies adjacent to the Tappan Zee Bridge within the Village of Grand View-on-Hudson in Rockland County. The property is bounded by the Hudson River to the east and River Road to the west, and slopes downward from the road to a flat area where the home in question has been constructed. The elevation of River Road varies along its 149-foot shared boundary with the Cunney property—at the southern end of the property the elevation is approximately 30 feet above the Hudson River, while at the northern end it is approximately 24 feet above the river.

Section E of the zoning law sets out the relevant height requirements for certain residential homes in the Village:

> It being the purpose of this section, among others, to preserve as nearly as practicable the remaining views o[f] the Hudson River from River Road, no building shall be erected in Zone B (R-10) which shall rise more than two stories in height nor more than four and one-half (4 1/2) feet above the easterly side of River Road. Where the lot lies substantially at the same level as River Road, no building or construction shall rise more than one story or fifteen feet in height.

4

The Village defines "easterly side of River Road" as "the point at which the road surface of River Road intersects with the easterly curb adjacent to River Road." Zone B (R-10), where Cunney's property is located, comprises the area between River Road and the mean high water mark of the Hudson River running north-south to the Village's limits.

A. The 2006 ZBA Decision

In 2006, Cunney desired to improve his property and applied to the Village for the requisite permits. Given the house's proposed height and floor area ratio, Cunney's initial site development plan for the construction of a single family residence required variances from the Village Zoning Law. Because Cunney's property is located within Zone B (R-10), Cunney's proposed development triggered section E limiting the highest point of his house to an elevation that is no more than four and one-half feet above the easterly side of River Road. A hearing was held before the ZBA on April 4, 2006 to consider Cunney's variance requests.

At the hearing, John Atzl, Cunney's surveyor, stated that section E is ambiguous with respect to the elevation point on River Road adjacent to the property from which the height of the house should be measured. Specifically, he questioned whether the terms of section E required measurement from the road's highest or lowest grade. Atzl reported that, given the ambiguity, he measured the house's highest roof elevation from the middle of the Cunney lot adjacent to the east edge of River Road. In response, the ZBA acknowledged that the primary issue concerning the house's compliance with section E was from which point on River Road should the height of the house be measured. In fact, even the Village's attorney agreed that section E was ambiguous and that the ZBA should clarify its terms.

5

Notwithstanding the apparent consensus that section E was vague and required clarification, the ZBA declined to interpret it. Having apparently determined that Cunney's proposal would require a height variance regardless of where on River Road the house height measurement was taken, the ZBA denied the variance requests finding them "substantial," and noted that "feasible alternatives" existed.

Despite the ZBA's refusal to act as a body to interpret section E, three of the five members of the ZBA nonetheless offered on the record their own interpretations of the proper elevation point on River Road from which the height of a house should be measured in determining its compliance with section E. ZBA member Tom Wolzien suggested that "any given point above River Road" can be used as the elevation point from which to measure the height of the house, while ZBA member David Kaliff stated that the "ordinance was written to protect the views of the community along River Road" and thus required the house height to be measured "at the lowest point of the road." ZBA Chairperson Dr. Maria Chamberlin-Hellman opined that the code should be interpreted to require measurement from the "lowest point along River Road to the highest point of the house" so that "the maximum variance would be needed." In light of the ZBA's denial of his variance requests and the three members' differing interpretations of section E, Cunney was forced back to the drawing board to revise his site plan and to speculate how the ZBA would, in a future proceeding, enforce the height restriction against him.

B. The Village Approves Construction of Cunney's House

In September 2006, the Village Planning Board conditionally approved Cunney's revised site plan. Due to the lingering confusion stemming from the ZBA hearings, this plan included

6

road elevation levels and house height measurements from five different stations (0+28, 0+40, 0+52, 0+62, and 0+74.5) located in the northern half of Cunney's lot. At each station on the plan, Atzl indicated both the road's elevation at a precise point as well as the height of the house at a corresponding point on the roof line 90° from the road. Relying upon the difference between height of the house and elevation of the road at these five stations, Atzl concluded that the proposed project was in compliance with section E.

In measuring the elevation points on River Road, Atzl used data from both a Rockland County topographical map as well as from a field survey his office had completed. He conducted the field survey because he was aware that there frequently were inaccuracies contained in county maps. In drafting the site plan, however, Atzl did not substitute his field survey road elevation levels for the county map elevation levels. The site plan Cunney submitted to the Village thus reflected only the road elevation levels as found on the county map.

In October 2006, Joseph W. Knizeski, the Village building inspector, issued Cunney a building permit. In January 2007, Knizeski requested a letter from Atzl certifying that the height of Cunney's house complied with section E's restrictions. In response, Atzl performed an "under construction" survey of Cunney's house and lot. He concluded that the house complied with section E because the "highest part of the roof line will not [rise] more than 4 1/2 feet [above] the easterly side of River Road."

Some months later Stephen Collazuol, the Village engineer, performed measurements at the site and wrote in a July 2007 letter to the Village that "[o]ur results determine that the roof ridge of the new dwelling is 4'-9" above the high point of pavement on the easterly side of River Road. Therefore, the ridge of the building is 3" greater than allowed." Collazuol included a

7

drawing with his letter showing that he relied on a single point of reference on River Road—"the high point of pavement"—from which he measured the height of the house. This reference point did not correspond with any of the five measuring stations Atzl relied on in drafting the site plan for the approved construction.

C. <u>The Village Denies Cunney's Certificate of Occupancy Application</u>

Following the completion of his house in August 2007, Cunney applied to the Village for a certificate of occupancy ("CO"). Knizeski, however, did not process Cunney's application at that time. Rather, in response to complaints from Village residents about the height of the house, the Village requested that Collazuol complete an independent review of the Cunney property. In October 2007 Collazuol wrote, based on the results of his final survey, that the heights of the completed house were "somewhat consistent with the site plan" except at station 0+40. Furthermore, he concluded that the "elevations of the road surface are inconsistent with the site plan and are lower than previously indicated." Despite this finding, Collazuol determined that the house was constructed substantially in accordance with the plans because it was no greater in height than as proposed. He noted that the "diminimous [sic] difference in roof height should be neglected as this falls within typical building tolerances, i.e. 0.90 ft. or 10 inches."

The Village found Collazuol's letter perplexing. Because Collazuol had determined that road elevation levels were lower than previously thought, the Village wanted him to explain his results by indicating whether he had conducted a physical survey of the property. A meeting was held on December 7, 2007, to further explore this apparent discrepancy in road elevation levels. At that meeting, Atzl informed the parties that he had erroneously relied upon inaccurate county topographical data in drafting the site plan.

8

Less than a week after the meeting, Collazuol sent the Village a follow-up letter and chart indicating the corrected road elevation levels for the five measurement stations included on the site plan that Cunney had submitted to the Village. Although at three of these stations Cunney's house was in compliance with section E, at station 0+62 the high point of the house's roof line was 7.45 feet above that corresponding elevation point on River Road. At that point, which of all stations yielded the maximum difference between the height of the house and the elevation of River Road, the house exceeded section E's height restriction by 2.95 feet. Even though Collazuol knew the Village would deny Cunney's CO application based on his measurements at station 0+62, he noted in his letter that the road's elevation at the south property line is 29.25 feet. When measured from this point on River Road, he stated, the height of Cunney's house exceeded section E's restrictions by only three inches.

Thereafter, on December 19, 2007, Knizeski denied Cunney's CO application. In doing so, he relied solely on Collazuol's third and final compliance determination which stated that at station 0+62 Cunney's roof height was "greater than allowed." Cunney appealed this decision to the ZBA.

D. The 2008 ZBA Decision

On appeal, Cunney requested that the ZBA interpret the definition of "height" in section E to clarify the point on River Road from which he was to measure the height of the house in determining if it complied with section E's requirements. More specifically, he requested the ZBA to construe section E in his favor by allowing him to measure the height of his house from the southernmost point of his property where the road's elevation peaks at approximately 30 feet. Under that interpretation, Cunney submitted that his house was in fact in compliance with the

9

ordinance. As an alternative, he asked the ZBA to grant him a height variance. Following hearings in February and April 2008, the ZBA determined that section E was not ambiguous and that Cunney's non-compliance was not caused by a misinterpretation of the Village Zoning Law but instead was due to Atzl's error in measuring road elevation. Specifically, the ZBA determined:

> The Zoning Law is not ambiguous with respect to the manner in which building height is measured in the R-10 Zoning District for the reasons that the definition of "Height" in the Zoning Law states that buildings are measured vertically and, when read together with the definition of "Easterly Side of River Road" clearly requires that to determine whether a building height exceeds 4 1/2 feet above River Road, the measurement is taken from the point at which the road surface intersects with the curb vertically to the highest point of the roof. The word "vertical" in Webster's New World Dictionary is defined as "perpendicular, or at a right angle, . . . upright, straight up or down."

After concluding that section E was not ambiguous and that Cunney's house exceeded its restrictions, the ZBA considered Cunney's variance request. The ZBA granted him a conditional variance requiring him to: (1) remove the pool house from its present location prior to the issuance of the CO; (2) ensure an open and unobstructed view "for the entire northerly side yard plus an area running in a diagonal line from the northeasterly corner of the residence through the northeasterly corner of the existing pool"; and (3) not build any structure at any time in the open and unobstructed view area described in condition (2). The ZBA concluded that although the variance was substantial, because the imposed conditions mitigated the negative impact Cunney's house had on the surrounding views of the river valley, the variance's benefits to Cunney outweighed the detriment to the community.

E.  The District Court Decision

Cunney filed a complaint in New York State Supreme Court, Rockland County, asserting that section E of the Village Zoning Law was void for vagueness both as applied to his property and on its face, and that the Village Defendants violated his substantive due process rights by denying his application for a CO.  Additionally, Cunney brought a negligence claim against Atzl, individually, as well as against his engineering firm, Atzl, Scatassa & Zigler Land Surveyors.  The Village Defendants removed the entire action to the United States District Court for the Southern District of New York.  Both Cunney and the Village Defendants subsequently moved for summary judgment.

In a December 18, 2009 memorandum and order, the district court granted the Village Defendants' motion for summary judgment on the void-for-vagueness and substantive due process claims.  Regarding the as-applied vagueness claim, the court first concluded that section E "describes, and a person of reasonable intelligence could discern, what activities are prohibited—building structures over two stories tall or four and one-half feet above the easterly side of River Road."  *Cunney*, 675 F. Supp. 2d at 399.  Addressing whether section E authorized arbitrary enforcement and, if so, whether Cunney's height violation went to the core of the regulation, the district court reasoned as follows:  because section E does not mandate a particular point of reference on River Road from which to measure a house's height, the ordinance could authorize potentially arbitrary or ad hoc enforcement.  *Id.* at 400.  However, Cunney's as-applied challenge failed because his property lay within the space subject of section E's core goal of preserving the remaining views of the Hudson River from River Road.  *Id.* at 400-01.  As a consequence of this holding, the district court also determined that Cunney's facial

11

attack failed because Cunney could not establish that the ordinance was impermissibly vague in all of its applications. *Id.* at 401-02.

With respect to Cunney's substantive due process claim, the court reasoned that because Cunney's house did not comply with section E's height restrictions, Knizeski, the Village building inspector, had discretion to deny the CO. *Id.* at 402. Given the building inspector's discretion, Cunney did not possess a clear entitlement to the CO. The court therefore dismissed his substantive due process claim, holding that the Village could not be found liable for violating a constitutional right that never vested. *Id.*

The district court entered an amended judgment on January 20, 2010, dismissing the complaint against the Village Defendants.[1] This appeal followed.

## II.  DISCUSSION

On appeal, Cunney contends that section E is void for vagueness as applied because it does not provide adequate guidance as to the elevation point on River Road adjacent to his property from which he should measure the height of his house. To the same end he also argues that because section E is vague, the Village Defendants are free to pick and choose measurement points along the road that best fit within their pre-determined compliance decisions. He asserts that in light of this ambiguity in the ordinance and the arbitrary action by the Village Defendants, the district court erred in characterizing his violation as one barred by the "core meaning" of

---

[1]The amended judgment also remanded Cunney's negligence claim against Atzl and his engineering firm to the New York Supreme Court, Rockland County.

12

section E and that his claim that he was subjected to arbitrary enforcement is not defeated by whatever guidance, if any, may be found in the ordinance's core meaning.[2]

Additionally, Cunney contends that the district court erred in dismissing his substantive due process claim because, in reliance on his receiving a building permit and the Village's repeated approval of the construction of his house, Cunney incurred substantial expenses while improving his property and thus acquired a vested right in a CO. Cunney argues that the Village Defendants' post hoc interpretation of section E to justify the denial of his CO constitutes a clear violation of his substantive due process rights.

We review an order granting summary judgment *de novo*. *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We agree that, as applied to Cunney, section E is unconstitutionally vague, and we therefore reverse the district court's grant of summary judgment in favor of the Village Defendants on this claim. Because the district court grounded its substantive due process analysis in its decision upholding the constitutionality of section E, we also vacate the grant of summary judgment in favor of the Village Defendants on Cunney's substantive due process claim.

---

[2] It is not necessary for this Court to also decide if Cunney is well situated to bring a facial challenge to section E because he has not argued or characterized his claim on appeal as such. *See Thibodeau v. Portuondo*, 486 F.3d 61, 71 (2d Cir. 2007).

13

A. <u>Vagueness Challenge to Village Zoning Law Section E</u>

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. xiv. Among the most fundamental protections of due process is the principle that "'[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of . . . statutes. All are entitled to be informed as to what the State commands or forbids.'" *Cramp v. Bd. of Pub. Instruction,* 368 U.S. 278, 287 (1961) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).

Supreme Court precedent recognizes two independent grounds upon which a statute's language may be so vague as to deny due process of law. First, a law violates due process "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "Animating this first vagueness ground is the constitutional principle that individuals should receive fair notice or warning when the state has prohibited specific behavior or acts." *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *Smith v. Goguen*, 415 U.S. 566, 572 (1974) ("The doctrine incorporates notions of fair notice or warning."). Second, a law is unconstitutionally vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. Statutes must "provide explicit standards for those who apply" them to avoid "resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). In reviewing the ordinance's language for vagueness, "we are relegated . . . to the words of the ordinance itself, to the interpretations the court below has given to analogous statutes, and, perhaps to some degree,

14

to the interpretation of the statute given by those charged with enforcing it." *Id.* at 110 (internal quotation marks and footnotes omitted).

1. Notice

The relevant inquiry under the first vagueness ground is "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008) (internal quotation marks omitted). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110. Rather, regulations may embody "flexibility and reasonable depth," *id.* (internal quotation marks omitted), and "satisfy due process as long as a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require," *Rock of Ages Corp. v. Sec'y of Labor*, 170 F.3d 148, 156 (2d Cir. 1999).

Section E's plain language prohibits the building of structures over two stories tall or four and one-half feet above the easterly side of River Road. Additionally, section E states that its purpose is to regulate building height in order to preserve views of the Hudson River. While section E affords a reasonable person adequate notice of what it generally prohibits (e.g., three-story buildings will be in violation), it is remarkably unclear with respect to how the four and a half foot limitation is defined. In this latter regard, nowhere does the ordinance describe from what adjacent elevation point on River Road the height of a building must be measured to determine the building's compliance with section E's height restriction. Consequently, this shortcoming not only fails to give specific notice of how a permit applicant should design his site

15

plan so that the proposed building complies with that restriction, but it also fails to provide an objective standard that the Village itself can apply in determining the project's compliance once an application has been submitted and thereafter when an approved project has been built.

2. Enforcement Standards

The second ground for determining unconstitutional vagueness—whether the ordinance fails to "provide explicit standards for those who apply [it]," *Thibodeau*, 486 F.3d at 65 (internal quotation marks omitted)—involves an inquiry into whether: (1) the "[the ordinance] as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement"; or (2) "even in the absence of such standards, the conduct at issue falls within the core of the [ordinance's] prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the [ordinance]." *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006). We hold that because section E makes no mention of where on River Road elevation is to be measured, the ordinance provides no standard that can be objectively applied to determine if the conduct at issue in this case—the construction of Cunney's house—complies with the ordinance's restrictions.

Although section E has a stated purpose of preserving the remaining views of the Hudson River from River Road, that alone does not provide sufficient guidance to otherwise save the ordinance from the risk of arbitrary enforcement. *Cf. United States v. Williams*, 553 U.S. 285, 306 (2008) ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminancy of precisely what that fact is. Thus, we have struck down statutes that tied

16

criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.").

As we have noted, "[i]n addition to [an ordinance's] plain meaning and stated purpose, courts should determine whether [the ordinance] provides sufficiently clear enforcement standards by analyzing 'perhaps to some degree . . . the interpretation of the [ordinance] given by those charged with enforcing it.'" *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 192 (2d Cir. 2010) (quoting *Grayned*, 408 U.S. at 110). Here, the Village Defendants' various interpretations of section E's measurement requirements serve only to reinforce our view that the ordinance's vagueness authorizes arbitrary enforcement.

Collazuol, the Village engineer, interpreted section E in two distinct ways. In July 2007, Collazuol relied on "the high point of pavement" as the single elevation point on River Road adjacent to the property from which he measured the height of the house in concluding that it complied with section E.[3] Responding to complaints from Village residents about the height of Cunney's house, Collazuol then made two additional compliance determinations in October and December 2007. He undertook both of those determinations by measuring the height of the house not from the "high point of pavement," which he had originally used, but from the five measurement stations Atzl included in the revised site plan.

In his October 2007 letter to the Village, Collazuol appears to have concluded, based on corrected road elevation levels at the five measurement stations, that Cunney's house was still in

---

[3] As already noted, Collazuol's height measurement from this single point of reference does not correspond to any of the measurements included on Cunney's revised site plan.

17

compliance with section E. In December, however, Collazuol, relying on yet a different set of corrected road elevation measurements, concluded in his third and final compliance determination that the height of Cunney's house violated section E. Relying solely on this last determination, Knizeski, the Village building inspector, denied Cunney's application for a CO. There is no question on the record before us that Collazuol, and consequently Knizeski, subjectively interpreted section E's requirements by applying inconsistent methodologies to measure whether Cunney's house complied with the ordinance.

Not only do the actions of the Village engineer and Village building inspector demonstrate that the ordinance's vagueness authorizes arbitrary enforcement, but the actions of the ZBA members themselves do as well. At Cunney's 2006 variance hearing, three of five members of the ZBA offered their own interpretations of where on River Road an applicant should measure the height of the house. In particular, ZBA member Wolzien suggested that "any given point above River Road" can be used as an elevation point from which to measure the height of the house. ZBA member Kaliff stated that the "ordinance was written to protect the views of the community along River Road" and thus required elevation to be measured "at the lowest point of the road." To the extent that his view that "any given point above River Road" can be used as the elevation point from which to measure meant any point chosen by the Board, that view itself indicates that the ordinance's vagueness authorizes arbitrary enforcement. Also, ZBA Chairperson Chamberlin-Hellman concurred with Kaliff's position opining that the ordinance should be interpreted to require measurement from the "lowest point along River Road to the highest point of the house" in order to require "the maximum [possible] variance." Notwithstanding this lack of consensus, the ZBA concluded in 2008 that section E was "not

18

ambiguous with respect to the manner in which building height is measured in the R-10 Zoning District."  In arriving at this decision, however, the ZBA declined to address the question placed squarely before it by Cunney and his engineer at the design stage of the project—from what adjacent point or points on River Road the ordinance required the height of the house to be measured.  For these reasons, we agree with the district court that "the Village's actions—its measurement procedure at the Property—and its own admissions [by ZBA members], demonstrate that no explicit standards exist regarding the method with which to measure from the easterly side of River Road.  Thus, [section E] could encourage potentially arbitrary or ad hoc enforcement."  *Cunney*, 675 F. Supp. 2d at 400.

### 3. Core Meaning

We recognize that "[w]here a[n ordinance] provides insufficient general guidance, an as-applied vagueness challenge may nonetheless fail if the [ordinance's] meaning has a clear core." *Farrell*, 449 F.3d at 493; *Brache v. Cnty. of Westchester*, 658 F.2d 47, 51 (2d Cir. 1981) ("[I]f a statute has a core meaning that can reasonably be understood, then it may validly be applied to conduct within the core meaning."); *Goguen*, 415 U.S. at 577-78 (noting that "there are statutes that by their terms . . . apply without question to certain activities, but whose application to other behavior is uncertain," and that such a statute may not be vague as applied to "hard-core violator[s] . . . whatever its implications for those engaged in different conduct").  Where the ordinance has a clear core, the "inquiry will involve determining whether the conduct at issue falls so squarely in the core of what is prohibited by the [ordinance] that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the [ordinance's] application in the circumstances."  *Farrell*, 449 F.3d at 494.  Applying these

19

standards, we hold that the ordinance as applied to the design and construction of Cunney's house is not saved by resort to a clear core. That is, the height of Cunney's house does not fall within the core of section E's prohibition because, under a reasonable interpretation of the ordinance, Cunney's house, as built, does comply with section E.

The district court dismissed Cunney's void-for-vagueness claim because in its view the application of section E to Cunney's property fell within the ordinance's core goal. The court interpreted section E's core goal—"to preserve as nearly as practicable the remaining views o[f] the Hudson River from River Road," Grand View, NY Zoning Law, ch. IX, § E (1999—to require:

> the shortest distance from any point on River Road to the Hudson River [to] be free of any view-obstructing structures that exceed the height requirements. For example, if a home has both a 100-yard frontage on River Road and an identical 100-yard frontage on the Hudson, an infinite amount of points can be used to measure the height. The measurement, in order to achieve its goal, must evaluate whether any structure between that arbitrary point and the Hudson violates the regulation. This can only be achieved if the line from point A on the road, and point B on the Hudson, is a straight line and the angle at measurement corresponds with the shortest distance between the two points.

*Cunney*, 675 F. Supp. 2d at 400. Because Collazuol's final compliance determination revealed that Cunney's house fell squarely within section E's proscribed height—particularly at station 0+62 which contained the point on River Road closest to the house in question—the district court concluded that the house's "height markedly destroy[ed] the views of the Hudson River from River Road." *Id.* at 401. We disagree with this conclusion because we do not see how section E's imprecise core meaning—the preservation of river views—translates into the precise construct laid out by the district court. While there is no question that the ordinance could have been drafted to do exactly what the district court suggests, or could have been interpreted by the

20

ZBA to call for this result, the ZBA refused to provide such guidance, and the ordinance's statement of core purpose is not so explicitly demanding.

To begin with, we agree that section E's core is clear to the extent that its purpose is to preserve Village views of the Hudson River. The question then becomes whether the height of Cunney's house falls so squarely within section E's core prohibition—the building of houses the height of which is more than four and one-half feet above River Road and destroying the views of the Hudson River—that no substantial concern about arbitrary enforcement exists because no reasonable enforcing officer could doubt the ordinance's application in these circumstances. *See Farrell*, 449 F.3d at 494. Based on the record before us, because a reasonable enforcement officer could find that Cunney's house does comply with the ordinance, we conclude that the height of Cunney's house does not constitute a "hard-core" violation of section E, and thus does not fit squarely within the ordinance's core prohibition. *See Goguen*, 415 U.S. at 577-78. Our review of the record gives us substantial concern that the ordinance was arbitrarily applied to Cunney's property. We therefore reverse the district court's dismissal of this claim.

First, as discussed above, Collazuol, Knizeski, and three members of the ZBA each offered permissible interpretations of section E's vague guidance defining the point on River Road adjacent to the property from which the height of the house should be measured, and two of them opined on how the measurement should be taken. Second, because River Road's elevation above the river fluctuates by some six feet along the boundary of the Cunney property—from approximately 30 feet in the south to 24 feet in the north—the application of these interpretations to Cunney's property would undoubtedly lead to divergent results. Third, it

21

is undisputed that, as ZBA member Kaliff stated, "even if 5 feet were taken off the top of the house there would not be a better view of the River."

Taken together, the undisputed facts of this case also demonstrate that a reasonable enforcement officer could interpret section E as permitting the height of the house to be measured from River Road's "high point of pavement" along the shared boundary with the Cunney property.[4] We find such a case in point specifically presented in the record. The Village engineer, Collazuol, following the discovery of the site plan data errors, apparently resolved in his third and final compliance determination that the road's "high point of pavement" was at least 29.25 feet above the Hudson River. Measuring from this elevation point on River Road to the high point of the roof line, he found that Cunney's house exceeded section E's height restriction by a maximum of three inches. There is no question—especially given Collazuol's earlier determination of typical building tolerances and *de minimis* violations—that a reasonable enforcement officer, even one zealously preserving river views, would nonetheless find a three inch overage to be *de minimis*. Nor is there anything in the ordinance that precludes the use of a high point on River Road adjacent to the property as the elevation point from which to determine the relative height of the house. In fact, in July 2007 Collazuol himself relied solely on the "high point of pavement on the easterly side of River Road" in determining the height of Cunney's house to be what he later articulated as effectively in compliance with section E. Applying this

---

    [4] To the extent the 2008 ZBA decision stated that the only relevant measurement points along River Road are those perpendicular from and within the boundary corresponding to the width of the house, and not those locations on River Road that fall outside these parameters, the Village Defendants clarified at oral argument their interpretation that the elevation point on River Road from which to measure the height of the house in question can fall anywhere along the property's entire frontage on River Road.

22

perfectly reasonable methodology, it is without question, on the record before us, that Cunney's house could be considered to be in compliance with section E.

Given our determination, it cannot be said that the height of Cunney's house falls so squarely within the core of section E's prohibition as to allay our substantial concerns regarding the risk of arbitrary enforcement. We therefore hold that because section E's terms provided the Village enforcement officers with unfettered latitude in making compliance determinations regarding Cunney's property, *see Farrell*, 449 F.3d at 494, section E, as applied here, is unconstitutionally vague.

B. Substantive Due Process

Cunney contends that the district court erred in dismissing his substantive due process claim because, in reliance on his building permit and the Village's approval of the construction of his house, Cunney incurred substantial expenses improving his property and thus acquired a vested right in a CO. Cunney argues that the Village Defendants' post hoc interpretation of section E to justify their denial of the CO constitutes arbitrary action amounting to a clear violation of his substantive due process rights. For the reasons that follow, we need not address these arguments in disposing of this appeal.

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (internal quotation marks omitted). In the land use context, an action for violation of substantive due process rights is "intended to be a tool capable of measuring particular applications to determine if the applicant had a legitimate claim of entitlement based on the likelihood that

23

without the due process violation that application would have been granted." *Sullivan v. Town of Salem*, 805 F.2d 81, 85 (2d Cir. 1986). The record is clear that the only reason provided by the Village for the denial of Cunney's CO application was that his house exceeded section E's height restriction. The district court's rationale in denying Cunney's substantive due process claim turned on its denial of his void-for-vagueness claim, which we have hereby reversed. In light of our holding today that section E is unconstitutionally vague, and thus may not be applied as a basis for denying Cunney a CO for the house that has been erected on his property, we will leave it to the district court to decide in the first instance the viability and merits of Cunney's substantive due process claim. *See City of Chicago v. Morales*, 527 U.S. 41, 64 n.35 (1999). Accordingly, we vacate the grant of summary judgment in favor of the Village Defendants on Cunney's substantive due process claim.

III. CONCLUSION

We have considered all of appellees' contentions on this appeal and have found them to be without merit. For the foregoing reasons, we hold that as applied to the appellant Brendan Cunney section E of the Village's zoning ordinance is unconstitutionally vague, and we reverse the district court's grant of summary judgment in favor of the Village Defendants on Cunney's claim that as applied section E is void for vagueness. We direct the district court to enter summary judgment in favor of Cunney on this claim. In addition, we vacate the grant of summary judgment in favor of the Village Defendants on Cunney's substantive due process claim, and remand for further proceedings consistent with this opinion. Cunney has made no request for relief from the remainder of the amended judgment, which remanded the malpractice claim to the Rockland County Supreme Court, and we do not intend by this opinion to disturb that remand. Costs are awarded to Plaintiff-Appellant.

24