20-4130-cv (L)
Berg. v. Village of Scarsdale

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 3rd day of December, two thousand twenty–one.

Present:    ROSEMARY S. POOLER,
            JOSEPH F. BIANCO,
                    *Circuit Judges*.
            ERIC R. KOMITEE,[1]
                    *District Judge*.

---

ROBERT J. BERG,

     *Plaintiff-Appellant-Cross-Appellee*,

      v.                                                      20-4130-cv, 20-4237-cv

VILLAGE OF SCARSDALE, VILLAGE OF SCARSDALE
POLICE DEPARTMENT,

     *Defendants-Appellees-Cross-Appellants*.

---

Appearing for Appellant:    Robert J. Berg, Scarsdale, N.Y.

Appearing for Appellee:     Terry Rice, Suffern, N.Y.

---

[1] Judge Eric R. Komitee, United States District Court for the Eastern District of New York, sitting by designation.

Appeal from the United States District Court for the Southern District of New York (Román, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED IN PART** and **REVERSED IN PART**.

Appellant Robert J. Berg appeals from the November 17, 2020 amended judgment of the United States District Court for the Southern District of New York (Román, *J.*), granting in part and denying in part Berg's motion for summary judgment. The district court granted Berg's motion to the extent it asserts a claim that the Village of Scarsdale and the Village of Scarsdale Police Department violated the First Amendment by selectively enforcing signposting laws but denied the remainder of Berg's motion that the Village's signposting laws violated the Fourteenth Amendment's Due Process Clause and the First Amendment. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

We review the district court's determination on summary judgment de novo. *Jones v. County of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019). In doing so, we apply the same standard that the district court applied, affirming a grant of summary judgment only where "there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Id.* "Where, as here, cross motions for summary judgment are filed, we evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (internal quotation marks omitted).

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. In reviewing a statute's language for vagueness, "we are relegated[] . . . to the words of the ordinance itself . . . and, perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (internal quotation marks and footnotes omitted). "The degree of vagueness tolerated in a statute varies with its type," *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008), and when a statute "is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts," *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) (citations and internal quotation marks omitted).

"Supreme Court precedent recognizes two independent grounds upon which a statute's language may be so vague as to deny due process of law." *Cunney v. Bd. of Trustees*, 660 F.3d 612, 620 (2d Cir. 2011). "First, a law violates due process 'if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.'" *Id.* at 620–21 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). "Second, a law is unconstitutionally vague 'if it authorizes or even encourages arbitrary and discriminatory enforcement.'" *Id.* at 621 (quoting *Hill*, 530 U.S. at 732).

We agree with the district court that the Village Code is not unconstitutionally vague because the language of the challenged provisions clearly notifies persons of ordinary intelligence what is proscribed. Section 196-17 bans any person from "post[ing], attach[ing] or

display[ing] any sign, notice, placard, poster, or other advertising medium to or upon or over any sidewalk, tree, stone, fence, wall, pole, railing or other object in, along, upon, or over any street, park or other public place in the village." Special App'x at 35. Section 281-2 defines "right-of-way" as "[g]enerally, the space owned by the Village extending approximately 13 feet from each curbline." Special App'x at 36. Based on these provisions, a person of ordinary intelligence would understand that the right-of-way is a public place and signposting is prohibited on the right-of-way. Section 256-1 states: "No person shall obstruct any street, sidewalk, public easement or other public place without first securing a written permit from the Village Engineer . . ." Special App'x at 35–36. Berg argues this provision is unconstitutionally vague because it does not define "obstruct." "*Webster's Third* defines 'obstruction' as 'something that obstructs or impedes,' and defines 'obstruct' as to 'block up.'" *Betancourt v. Bloomberg*, 448 F.3d 547, 553 (2d Cir. 2006). Section 256-1 clearly indicates, to a person of ordinary intelligence, that a person wishing to block or impede a public space must seek a permit to do so. *See Grayned*, 408 U.S. at 110–11 ("[W]e can never expect mathematical certainty from our language . . . but we think it is clear what the ordinance as a whole prohibits." (citations and internal quotation marks omitted)).

Additionally, the Village Code does not authorize or encourage arbitrary or discriminatory enforcement. Berg argues that Section 256-1 is unconstitutional because it lacks sufficient enforcement standards. To determine whether a statute contains sufficient enforcement standards, we consider whether "(1) the [ordinance] as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement; or (2) even in the absence of such standards, the conduct at issue falls within the core of the [ordinance's] prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the [ordinance]." *Cunney*, 660 F.3d at 621–22 (internal quotation marks omitted). Here, the enforcement standards for Section 256-1 appear in Section 294-1(B), which provides: "No shrub, fence, wall or other structure may be located on any land within 15 feet of the edge of the traveled way of any street within the limits of the village if such shrub, fence, wall or other structure obstructs or interferes with the view of drivers of vehicles on a driveway . . . ." Special App'x at 37. These standards provide guidelines for the Village Engineer's review of permits under Section 256-1 and therefore, the provisions do not authorize or encourage arbitrary or discriminatory enforcement.

The First Amendment "provides that 'Congress shall make no law . . . abridging the freedom of speech.'" *Hobbs v. County of Westchester*, 397 F.3d 133, 148 (2d Cir. 2005) (quoting U.S. Const. amend. I). "[G]overnment regulation of expressive activity is content-neutral so long as it is justified without reference to the content of the regulated speech." *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 155 (2d Cir. 2013) (citation, emphasis, and internal quotation marks omitted). The Village Code is a content-neutral regulation because it prohibits "any" and "all" signposting on public property. "Content-neutral regulations may limit the time, place, or manner of expression—whether oral, written, or symbolized by conduct—even in a public forum, so long as the restrictions are reasonable, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information." *Hobbs*, 397 F.3d at 149 (internal quotation marks omitted). As the district court properly found, the Village has multiple interests in prohibiting signposting in public places. Section 196-17 is in the Village Code's chapter on litter, which demonstrates that the Village has an aesthetic interest in preventing the proliferation of signposting on public land. *See Members of City Council v.*

*Taxpayers for Vincent*, 466 U.S. 789, 807 (1984) ("The problem addressed by this ordinance—the visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property—constitutes a significant substantive evil within the City's power to prohibit."). Additionally, Section 256-1, which prohibits obstructions on streets, sidewalks, public easements, or other public places without a permit, is clearly meant to promote pedestrian and traffic safety. *See Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 104 (2d Cir. 2010) ("The twin goals of protecting the aesthetic appearance of a city and maintaining traffic safety are substantial government goals." (internal quotation marks omitted)).

The district court also correctly found that the provisions are "narrowly tailored" to advance the substantial government interests identified above. "The narrow tailoring requirement is satisfied so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation." *Hobbs*, 397 F.3d at 149 (citations, alterations, and internal quotation marks omitted). Because the Village's interests in prohibiting signposting are aesthetic concerns and the promotion of public safety, "the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." *Taxpayers for Vincent*, 466 U.S. at 817. Lastly, the Village's regulations leave ample opportunity for protected speech because signs can be posted on private property. In this case, signs posted on the Village right-of-way could simply be moved further back from the curbline until they were on private land. Therefore, the Village's sign ordinances are permissible content-neutral time, place, and manner restrictions and do not violate the First Amendment.

Finally, we turn to Berg's "as applied" claim under the First Amendment. Berg alleges that the Village violated his right to free speech by its "selective enforcement of the Village Code and the NY Penal Code against political lawn signs posted within the Village rights of way while, at the same time, turning a blind eye towards the far more prevalent commercial lawn signs . . . posted within the Village rights of way." App'x at 71. As a threshold matter, we note that Berg describes his claim as an "as applied" challenge under the First Amendment, but he also frequently refers to it as a "selective enforcement" claim, "a phrase associated with analysis under the Equal Protection Clause." *See Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004). Although there can be overlap between a "viewpoint discrimination" claim under the First Amendment and a "selective enforcement" claim under the Equal Protection Clause of the Fourteenth Amendment, the district court properly assessed Berg's claim, as articulated in the complaint, under the First Amendment. *See* Special App'x 57–60. To prevail on a viewpoint discrimination claim based upon the application of a facially neutral law, a plaintiff must show a "pattern of unlawful favoritism." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 325 (2002). Berg's claim that the Village unlawfully favored commercial signs, while enforcing the Code against political signs, cannot survive summary judgment.

Here, the uncontroverted evidence in the record demonstrates that, from 2006–2016, the Village disfavored commercial signs by essentially only enforcing the Village Code against commercial signs. For example, the police dispatch logs relating to code enforcement for that timeframe show that out of 83 entries, only one related to a political sign. The other 82 entries were for commercial signs, many of which were then removed by the police or by the owner. Thus, the Village did not favor commercial signs during 2006–2016, but rather (as the district court found) favored political signs.

4

To the extent that Berg claims the police were "turning a blind eye" towards commercial signs in the weeks leading up to the February 2018 school district bond referendum, there is insufficient evidence in the record on that claim to survive summary judgment. The police dispatch logs demonstrate that 8 of the 23 entries during 2017–2018 related to commercial signs, including 4 that were self-initiated by the police. Moreover, there is no evidence in the record that, even in this later timeframe, the police were intentionally targeting political signs (or any signs based upon their content). Rather, in 2017–2018, the police responded when complaints were made about signs illegally placed in the right-of-way, whether commercial or political. Thus, out of the 23 dispatch log entries for 2017–2018 related to political signs, only one was initiated by the police, as opposed to being in response to a complaint. Although Berg has submitted photographs of commercial signs that were not removed from the public right-of-way in that later timeframe, there is no evidence that there were complaints about the location of those signs that were brought to the attention of the police, and that any such complaints were ignored. In short, based upon the uncontroverted evidence, no rational juror could find that the Village was engaged in a "pattern of unlawful favoritism" towards commercial signs based upon its enforcement of the Village Code. *Thomas*, 534 U.S. at 325.[1]

However, because of the uncontroverted evidence of the Village's favoritism of political signs in the 2006–2016 timeframe, the district court ruled that Berg should prevail on his "as applied" claim. We disagree. As noted above, Berg did not proceed on such a theory—his claim unsuccessfully asserted that commercial signs were favored by the Village. In any event, even if Berg attempted to bring such a claim on behalf of holders of commercial signs, he would lack standing to do so because all of his signs were political. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Accordingly, we conclude that the district court erred in denying summary judgment to the Village on Berg's "as applied" claim.

We have considered the remainder of the parties' arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is **REVERSED** as to Berg's as-applied claim and **REMANDED** with instructions to enter judgment in favor of the Village, and is **AFFIRMED** as to the grant of summary judgment to the Village on all other claims.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[1] Even assuming that Berg was attempting to cast this claim as a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, such a claim would fail for the same reasons—namely, the lack of evidence that his political signs were treated less favorably than commercial signs based upon their content. *See Kerik*, 356 F.3d at 210–11 (holding that an "as applied" claim failed under either viewpoint discrimination or selective enforcement because of a lack of evidence of differential treatment).